HELEN J. WATERMAN *et al.*

*v.*

PHILANDER M. ALDEN *et al.*

*Filed at Ottawa, January* 19, 1893.

1. TRUSTS AND TRUSTEES — *degree of skill required of trustees.* Trustees must discharge the duties of their trust to the best of their skill and ability, with such care and diligence as men fit to be entrusted with such matters may fairly be expected to put forth in their own business of equal importance.

2. SAME — *equity jurisdiction — to remove trustees or compel them to act.* Courts of equity have a very broad jurisdiction over trust estates and trustees, and will remove the latter for a failure through neglect, or from willfulness, to perform their duties, or will compel them to carry out the trust which they have been appointed to and have accepted, as shall appear, under all the circumstances of a given case, for the best interest of the estate and all the parties interested in the same.

3. It is not every mistake or neglect of duty or inaccuracy of conduct of trustees which will induce a court of equity to remove them; but the act or omission must be such as to endanger the trust property, or to show a want of honesty, or a want of proper capacity to execute the duties, or want of reasonable fidelity.

4. Courts of chancery have jurisdiction generally on the application of beneficiaries of a trust fund, to charge trustees with losses occurring through their negligence or mismanagement, and the fact that trustees are also executors of a will of the testator who created the trust, will not deprive a court of equity of its jurisdiction, when the bill does not seek to remove any part of the administration of the estate from the County Court.

5. SAME — *liability of trustees — for neglect to collect notes.* When trustees, to whom a testator devised his property in trust, consisting of notes, among other things neglect to take proper steps to collect or secure the same, which might have been collected or secured by proper care and diligence, whereby the debt secured thereby is lost, they will be chargeable with the amount of the loss from their neglect of duty.

6. The fact that the relations existing between the testator or payee of the notes and their makers may have been such that the former would, if living, rather lose the debt than press its collection, will furnish no excuse for the trustees to neglect or fail to use all reasonable diligence in the matter. Their duties are fixed by the law, and a violation of them renders them personally liable.

7. In such a case it does not follow, because the trustees were guilty of negligence in not collecting the notes as executors, that they are not also guilty of neglect of duty in that regard as trustees. The executors and trustees being the same persons, it is impossible that there should be an act of fraud or breach of duty by the executors which is not consented to and acquiesced in by them as trustees.

8. SAME — *failure of trustees to collect notes — defense therefor.* Trustees of a fund, who are also the executors of an estate, will not be held personally liable for a failure to collect a note constituting part of the estate and trust property, where it does not appear that they could have secured or collected it, however ·prompt and diligent they might have been, and defense to the note is shown.

9. SAME — *right of trustees to legal counsel — attorney's fees chargeable to estate.* Where an estate is devised to executors in trust for the benefit of certain beneficiaries, and it becomes a matter of difficulty to determine what property belongs to the principal and what to income, the trustees will be entitled to the advice of legal counsel, and, if necessary, the aid of a court of equity, to properly settle that question, and to charge the estate with reasonable attorney's fees.

10. SAME — *liability of trustees for costs.* Where trustees of an estate are responsible for the most expensive part of the litigation on bill by the beneficiaries to remove them and to charge them for losses resulting from their neglect of duty, and it appears that they failed to keep proper accounts of their trusteeship, there will be no error in charging them with the principal part of the costs and expenses of such litigation.

11. COSTS — *in chancery — discretion of the chancellor.* The taxing of costs in a chancery proceeding is always within the sound legal discretion of the chancellor, and his decree in that regard will only be reversed when it is shown that such discretion has been abused.

12. WITNESSES — *bill charging trustees with neglect to collect notes — competency of makers of the notes.* On bill by the beneficiaries of a trust fund against trustees holding the trust property to charge them with notes which were not collected, the makers of such notes are competent witnesses to show that they had a valid defense against their collection.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Lee county; the Hon. JOHN D. CRABTREE, Judge, presiding.

Mr. WILLIAM R. PLUM, for the appellants :

The trustees are liable for the breach of duty as executors. *Rowan* v. *Kirkpatrick,* 14 Ill. 1 ; *Whitney* v. *Peddicord,* 63

id. 249 ; *McCreedy* v. *Mier*, 64 id. 495 ; Perry on Trusts, sec. 876 ; Story's Eq. Plead. 213.

On the question of the dual capacity of the appellees, see *Johnson* v. *Johnson*, 2 Hill (S. C.), 215 ; *State* v. *Hearst*, 12 Mo. 365 ; *Watkins* v. *State*, 2 Gill & J. 220 ; *Karr* v. *Karr*, 6 Dana, 3.

It is a breach of trust not to furnish accurate information of the estate; trustees must keep clear and distinct accounts, and be ready to render them whenever called for, or pay costs. Willis on Ests. of Trustees, L. L. No. 10, 177–81.

It is a paramount duty to have them ready and open for inspection. Courts will not tolerate an omission. Urlin on Trusts, 277.

Trustees are bound to keep clear and distinct accounts of the property in their management. *Freeman* v. *Fairlie*, 3 Mer. 43.

All presumptions are against trustees failing to keep accounts. Perry on Trusts, sec. 821.

Payments to attorneys and others for work on accounts which the trustees themselves may do, will not be allowed. *Hurlbut et al., Exrs.,* v. *Hutton*, 13 Cent. Rep. 378 (N. J.); *Fowler* v. *Lockwood*, 3 Redf. R. 466,

Executors must promptly collect, especially when the debt is on personal liability only, though the debtor is reputed wealthy ; solicitation without suit insufficient. *Lawson* v. *Copeland*, 2 B. C. C. 156 ; *Cary* v. *Bond*, 2 Beav. 486 ; *Bailey* v. *Gould*, 4 Y. & C. 221 ; *Atty.-Genl.* v. *Highman*, 2 Y. & C. C. 634 ; *Powell* v. *Evans*, 5 Ves. 839 ; *Buttoch* v. *Wheatley*, 1 Call. 130 ; Lewin on Trusts, 290 ; Schouler on Executors, 267 ; *Johnson's Estate*, 9 Watts & S. 107 ; *Byrne* v. *Norcott*, 13 Beav. 336 ; *Whitney* v. *Peddicord*, 63 Ill. 250.

They should not have employed the bank's attorney. *Waring* v. *Waring*, 3 Ired. Ch. 331.

Alden had no right to secure his own debt at the expense of the estate. *Long's Estate*, 6 Watts, 49.

Trustees are held to the same diligence they should exercise as to their own affairs.   Lewin on Trusts, 294–307; Perry on Trusts, 266.

Alden and Robinson are liable in chancery for a *devastavit.* *Rowan* v. *Kirkpatrick,* 14 Ill. 1; *James* v. *Frearson,* 1 Y. & C. C. C. 370; *Taylor* v. *Millington,* 4 Jur. (N. S.) 204.

They can not plead the dual capacity dodge in these courts of conscience and common sense.   *Johnson* v. *Johnson,* 2 Hill (S. C.), 215; *State* v. *Hearst,* 12 Mo. 365; *Watkins* v. *State,* 2 Gill & J. 220; *Karr* v. *Karr,* 6 Dana, 3; Williams on Executors, 1658, 6th Eng. ed.

When and for what cause equity will remove a trustee. *Clemens* v. *Caldwell,* 7 B. Mon. 161; *Atty. Genl.* v. *Garrison,* 101 Mass. 223; *Farmers' Loan and Trust Co.* v. *Hughes,* 11 Hun, 130; *Lill* v. *Neafie,* 31 Ill. 101; Story's Eq. Jur. secs. 1287, 1289; *Andrews* v. *Tucker,* 7 Pick. 250; *Johnson's Appeal,* 9 Pa. St. 416; Perry on Trusts, 818; *Richards* v. *Barrett,* 5 Bradw. 510.

Trustees must be constantly ready with their accounts and not mix them with others.   If suit is necessary they will be mulct in costs.   Urlin on Trusts, 277; Fletcher on Estates of Trustees, L. L. No. 10,177; Godefroi on Trusts and Trustees, 227–8; Tiffany & Bullard on Trusts and Trustees, 704–5–6; Perry on Trusts, 911.

Chargeable if credits omitted in accounts.   *Chamberlain* v. *Estey,* 55 Vt. 378.

If he denies assets contrary to the facts, suppresses evidence, puts plaintiffs to unnecessary proofs, sets up unfounded or inequitable defenses he must pay the costs.   Perry on Trusts, 900; *Cook* v. *Lowry,* 95 N. Y. 103.

Chargeable if only inconvenience results from misconduct, not willful.   Perry on Trusts, 901, 903.

So if guilty of breach of trust in general.   Tiffany & Bullard, 703; *Moore* v. *Zabriskie,* 3 C. E. Greene, 51.

Or loan money in a manner unauthorized.   Id. 704.

If suit concerns separate funds they bear their share. Perry on Trusts, 903 A.

If trustee fails in his resistance to claims he is liable for costs. *Beverly* v. *Brooke*, 4 Gratt. 187; *Jenkins* v. *Eldredge*, 3 Story, 325.

Solicitors' fees. If a trustee is deprived of his costs for misconduct he can not have solicitors' fees. Perry on Trusts, 910.

He has no claim for reimbursement, if proceedings were occasioned by his negligence. Lewin on Trusts, 636–7.

Messrs. CARNES & DUNTON, for the appellees :

As to when is to begin the computation of the net income and profits, see *Sitwell* v. *Barnard*, 6 Ves. 520 ; 3 Pomeroy's Eq. 136 ; Perry on Trusts, sec. 550 ; Lewin on Trusts, 5th ed., 247–249.

It frequently becomes material to ascertain the precise time when the possession in the character of executor or administrator ceases and that of trustee commences. In the former case he is answerable to the probate courts, in the latter to courts of chancery only. Homer's Probate Law, sec. 114, citing Hill on Trustees, 237 ; *In re Estate Whitman*, 22 Ill. 518. See also *Hall* v. *Irwin*, 2 Gilm. 181 ; *Nicoll* v. *Scott*, 99 Ill. 530.

If the trust is given to one named and the same person is afterward appointed executor, the trust is not annexed to the office of executor. 1 Perry on Trusts, sec. 262 ; *James' Appeal*, 3 Grant, 169.

When executor is discharged and he becomes liable as trustee. 1 Perry on Trusts, sec. 4631; citing *Hall* v. *Cushing*, 9 Pick. 395 ; *Newcomb* v. *Williams*, 9 Met. 534; *Conkey* v. *Dickinson*, 13 id. 53 ; *Hubbard* v. *Loyd*, 6 Cush. 522; *De-Peyster* v. *Clendenning*, 8 Paige, 310 ; *Miller* v. *Congdon*, 14 Gray, 114.

When trustees personally liable for a loss and of the care required of them. Story's Eq. Jur. secs. 1268, 1271, 1272; *Whitney* v. *Peddicord*, 63 Ill. 249 ; *Rowan* v. *Kirkpatrick*,

14 id. 1 ; *McElheney* v. *Musick,* 63 id. 330; *Shields* v. *Shields,* 6 Barb. 56.

A case can not be found taxing trustees with costs, unless found guilty of *mala fides* or criminal negligence. Lewin on Trusts, 634.

In suits between trustees and *cestui que trust* when there is a fund under the control of the court, it is a general rule that the trustees shall have their costs, as matter of course, out of that fund, unless they have forfeited that right by misconduct. *Atty. Genl.* v. *City of London,* 1 Ves. Jr. 246; *Taylor* v. *Glanville,* 3 Med. 176 ; *Curtiss* v. *Chandler,* 6 id. 123 ; *Ceventry* v. *Ceventry,* 1 Kern. 758.

" The mere fact that an executor has neglected to render an account when requested will not, of itself, make him liable for costs." Tiffany & Bullard on Trusts and Trustees, 704 ; *White* v. *Jackson,* 15 Beav. 191; *Robertson* v. *Wendell,* 6 Paige, 322; *Minuse* v. *Cox,* 5 Johns. Ch. 451; *Dunscomb* v. *Dunscomb,* 1 id. 507; *Smith* v. *Smith,* 4 id. 445.

" In these cases the court will exercise a sound discretion, and if it appear that the *cestui que trust* demanded more than he was entitled to receive, and the executor submitted to the discretion of the court, he will be entitled to his costs. Tiffany & B. 704; *Dunscomb* v. *Dunscomb,* 1 Johns. Ch. 507. * * * Trustees should not in general be charged personally with costs." T. & B. 706 ; *Moses* v. *Murgatroyd,* 1 Johns. Ch. 473. * * *

" Suits against trustees are frequently rendered necessary by circumstances, independent of and wholly unconnected with any breach of trust, and in such cases the court will meet the justice of the case by apportioning the costs of suit, and will, in general, give the trustees all the costs not actually occasioned by their breach of trust." T. & B. 708 ; Hill on Trustees, 564; *Frozier* v. *Andrews,* 2 Jones & Lat. 199 ; *Sterritt's Appeal,* 2 Pa. 419.

" Where there was a suit to charge the trustees with the consequence of a particular breach of trust, and also to obtain the direction of the court as to the general administration of the trust, the trustee was allowed the general costs of suit, but charged with so much as had been caused by his breach of trust." T. & B. 709 ; *Pride* v. *Fooks,* 2 Beav. 430 ; *Hewitt* v. *Foster,* 8 Jur. 759.

" Courts are not eager to punish trustees by depriving them of their costs, and where there are mitigating circumstances, they have been allowed their costs of suit in which the decree was against them for a breach of trust ; as where there had been a misapplication of only a small part of the fund, and the suit had been instituted for other purposes, and there was no imputation against the trustees." T. & B. 712 ; *Fitzgerald* v. *Pringle,* 2 Moll. 534 ; *Semmes* v. *Rickermann,* 2 Ves. Jr. 36 ; *Bennett* v. *Going,* 1 Moll. 529 ; *Taylor* v. *Tabrum,* 6 Sim. 281.

" In suits between trustees and *cestui que trusts,* where there is a fund under the control of the court, trustees, as a general rule, are entitled to their costs out of the fund, to be taxed as between solicitor and client, and not like ordinary cases as between party and party." T. & B. 713 ; *Amand* v. *Bradbourn,* 2 Chan. Cas. 138 ; *Mohun* v. *Mohun,* 1 Sw. 201 ; *Pride* v. *Fooks,* 2 Beav. 473 ; *Hosack* v. *Rogers,* 9 Paige, 463 ; *Irving* v. *DeKay,* id. 533 ; *Minuse* v. *Cox,* 5 Johns. Ch. 451.

" But costs between solicitor and client will not include every charge which a party's own solicitor would be entitled to make against him in his bill, or any charges or expenses which are not, strictly speaking, costs ; therefore to include all, the decree should go on to allow the trustee his charges and expenses or for just allowances." T. & B. 713 ; Hill on Trustees, 565 ; *Fearns* v. *Young,* 10 Ves. 184 ; Hill on Trustees, 556.

" He, the executor, may be allowed his costs where there has been a breach of the trust." *Norris' Appeal,* 71 Pa. St. 115–126.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

On the 28th day of November, 1870, James S. Waterman executed his last will and testament, by which he gave his wife one-third of all his estate, and a specific legacy of $5000, in trust for the use of one Nellie Farnhdon. The rest of his estate was disposed of by the following residuary clause : " I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to the said Philander M. Alden and George S. Robinson,     *     *     *     the executors of this my last will and testament, hereinafter nominated and appointed, in trust for the use and benefit of my brothers and sisters, to-wit (naming them): to have and hold, manage, and control the same for such purpose, for and during the term of twenty-one years, from and after the date of my decease and during the continuance of said trust estate as aforesaid, to receive, collect and pay over to my said brothers and sisters above named, the net income and profits thereof, in equal portions to each, annually, the child or children of a deceased brother or sister to take the same portion the father or mother would have taken if living. And at the expiration of said twenty-one years after my decease, I give, devise and bequeath to my said brothers and sisters, their heirs and assigns forever, the said rest, residue and remainder of my estate, both real and personal, to be equally divided between them, share and share alike, the child or children of any deceased brother or sister to take the same share the father or mother would have taken if living, and in case of the death of any of my said brothers or sisters, leaving no issue, the share such brother or sister would have taken, if living, to be equally divided among my surviving brothers and sisters."

The testator died July 19, 1883, and on the 24th of the same month, said will was duly admitted to probate, in the County Court of DeKalb county, whereupon said Alden and Robinson were qualified, and took upon themselves the duties

7—144 ILL.

of executors and trustees as in and by the will provided. The estate was very large, being inventoried at about $531,000, consisting of farm lands and other real estate to the value of $127,512.70, and the balance in cash, notes and accounts, stocks, etc. The widow declined to take under the will, and her husband having left no child, or children, or descendants of such, one-half of the entire estate, real and personal, was partitioned and set off to her, as provided by the statute in such case. The administration was still pending and undeter-. mined in said County Court at the filing of this bill. Said Alden and Robinson had reduced a part of the trust property to possession and made a partial distribution of the proceeds thereof to the beneficiaries, when, on the 9th of June, 1887, Robert W. and Charles Waterman, surviving brothers of the testator, and certain children of deceased brothers and sisters, claiming under said residuary clause, begun this action in the Circuit Court of said DeKalb county, against Alden and Robinson, to compel them to render an account of their trustee-ship, to charge them with certain losses to the trust estate by reason of their negligent and wrongful conduct in and about the management of the same, and to have them removed as such trustees, and others appointed in their stead.

After protracted litigation, a final decree was rendered in the cause by the Circuit Court of Lee county, to which it had been removed. The complainants carried the record to the Appellate Court for the Second District by appeal. There both parties assigned errors, and an extended statement of the case, with a very carefully prepared opinion by CARTWRIGHT, J., was filed, affirming the decree of the Circuit Court in all respects. This appeal is from that judgment of affirmance.

The record is unusually voluminous, and the argument of counsel on behalf of appellants has taken an almost unlimited range. It would be impossible to even casually notice all the points made, without extending this opinion to an unreason-able length. For a full statement of the facts of the case we

refer to the opinion of the Appellate Court. We also concur in the conclusions reached by that court, as set forth in said opinion, except as hereinafter indicated.

The points more particularly pressed upon our attention are,

*First.* The Circuit Court erred in refusing to remove appellees as trustees.

*Second.* The Circuit Court erred in refusing to hold said trustees personally liable for the loss of the " Marsh indebtedness."

*Third.* The Circuit Court erred in its division of the costs and expenses of the litigation. The parts of the final decree relating to these assignments of error are as follows: " It is further ordered, adjudged and decreed that the motion of complainants, filed herein on the 17th of July, 1890, for the removal of Alden and Robinson, as trustees, be overruled."

"And it is further ordered, adjudged and decreed that this court has no jurisdiction to investigate the charge against said Alden and Robinson, or either, on account of any alleged loss, growing out of the failure of the Sycamore Marsh Harvester Man'fg Co., the Marsh Binder Man'fg Co., C. W. Marsh and W. W. Marsh, or either, or two or more of them, or the alleged neglect of the said Alden and Robinson to collect or secure the payment of obligations owing by them, or some of them, to the estate of James S. Waterman, deceased."

" It is further ordered, adjudged and decreed that the expenses of this litigation paid up to October 15, 1889, as found by said master's report, to-wit: $3,869.71, and the attorney's fees and attorney's expenses in this cause paid or incurred since October 15, 1889, as enumerated and shown by the testimony of D. J. Carnes and William Lathrop, heard in open court, up to July 19, 1890, to-wit: $1,348.27, be allowed said trustees in their accounts, when they shall have actually paid the same, and shall be charged to the principal fund, less one-fourth part of the gross attorney's fees therein included, which one-fourth part is found by the court to be $988.62, and which one-fourth

part said trustees are ordered to bear personally, leaving $4,229.36 to be charged to the principal fund. This decree shall not be construed as allowing or disallowing any other expense of this litigation paid or incurred by said trustees since October 15, 1889. And it is further ordered and decreed that the costs of this proceeding be taxed as follows: That is to say, that two-thirds thereof be paid by the trustees, as such, out of the principal fund in their hands, and one-third of said costs out of the distributable income going to the complainants, and that in taxing the costs the clerk allow $500, paid by stipulation on file herein to Mason B. Loomis, and $360, paid by said trustees to Sherwood Dixon, as special masters. Also payment by them of $15.40 for witness fees, and $312.80 for depositions, which sums so far as paid by them, except that paid Master Dixon, are shown by his report to have been paid and are embraced in the items of $3,869.71, costs of this litigation. The clerk will also tax as part of the complainant's costs herein the sum of $392.86, paid by complainant for taking depositions. Also $47.40 for certified copies of record, $2.50 for service of subpœnas, $8 witness fees paid by complainant's solicitor. The clerk will also tax the usual taxable costs incurred by either party."

We will consider the foregoing questions in the order named, referring to the facts appearing in the record especially applicable thereto.

There is no difficulty in finding the legal measure of care and diligence required at the hands of trustees in the management of a trust estate. Cases may be found holding that inasmuch as no compensation can be allowed them, when not expressly provided for, they can only be held liable for losses which result from their gross negligence or willful misconduct, but the rule undoubtedly is, that they must discharge the duties of their trust to the best of their skill and ability, "with such care and diligence as men fit to be entrusted with such matters may fairly be expected to put forth in their own busi-

ness of equal importance." Story's Eq. Jur., vol. 2, sec. 1268b ; Pomeroy's Eq. Jur., vol. 2, sec. 1070.

The evidence in this case clearly shows, and in fact it is admitted, that appellees were, prior to the filing of this bill, guilty of some negligence, in and about the management of the trust property. First, they wholly failed to keep proper accounts of the trust funds and of their dealings with the same, as will more fully appear hereafter. In the second place, Robinson gave little or no attention to the business, being much of the time absent from the State. It will not do to say, as is attempted, that his personal attention was not necessary to the proper management of the business, in view of the fact that numerous letters were written him by Alden, complaining of his continued absence and demanding his presence and attention to the estate. Finally, general negligence was shown in failing to promptly collect or secure claims due the estate, especially those owing by the " Marsh Manufacturing Companies.'

It does not follow necessarily that, because of these acts of negligence, a court of chancery should remove them. Courts of equity have a very broad jurisdiction over trust estates and trustees, and will remove the latter for a failure through neglect, or from willfulness, to perform their duties, or will compel them to carry out the trust which they have been appointed to, and have accepted, as shall appear under all the circumstances, of a given case, for the best interest of the estate, and all parties interested in the same. In Story on Equity Jurisprudence, vol. 2, sec. 1289, it is said : " It is not, indeed, every mistake or neglect of duty, or inaccuracy of conduct of trustees, which will induce courts of equity to adopt such a course (remove the trustees). But the act or omission must be such as to endanger the trust property, or to show a want of honesty, or a want of proper capacity to execute the duties, or want of reasonable fidelity."

The dereliction of duty on the part of these trustees seems to have resulted from mere negligence rather than willfulness,

and we are of the opinion that the chancellor was justified on the whole record in refusing to remove them.

Whether or not the trustees should be held personally liable for losses sustained by the complainants. on the " Marsh indebtedness " is attended with much more difficulty. It is alleged in the bill that among the assets which came into their hands were three judgment notes, payable to said James W. Waterman, one for $5000, dated April 27, 1883, due in ninety days, signed by the Sycamore Marsh Harvester Co., and C. W. and W. W. Marsh.   One for the sum of $3000, dated June 13, 1883, due in ninety days, by the same parties, and one for $5350.40, dated January 1, 1878, by C. W. and W. W. Marsh alone.   It is then alleged that after said notes came into their hands and were due and payable to them, they knew the makers were embarrassed financially and likely to fail, but took no steps to collect or secure the same until June 30, 1884. That said Alden being cashier, one of the directors, and a large stockholder in the Sycamore National Bank, on October, 1883, the said Alden knowing the financial embarrassment of the said makers of said notes, said bank loaned them about $25,000 ; that thereafter said Alden pressed said parties for security for said bank indebtedness, which was given, but that he made no effort whatever to obtain security for said indebtedness due the estate, although security therefor could have been obtained ; that on said June 30, 1884, Alden caused the notes due the estate to be put in judgments in the Circuit Court of Lee county, although the Circuit Court of De Kalb county was at the time in session, the makers of said notes having property in the last-named county subject to lien, and levy, of judgments on said notes ; that he employed the same attorney who represented said bank, and he at the same time took judgment in its favor for said $25,000 indebtedness ; that through the wrongful and negligent conduct of said trustees, said property in DeKalb county was allowed to be levied upon and taken on executions in favor of said bank, and others, to the exclusion of those in favor of

the estate ; that, through the negligence of the trustees, property attempted to be levied upon in said county on executions in favor of the estate, was wrongly described and thereby priority of lien in favor of said estate lost ; that by reason of such neglect and mismanagement on the part of appellees, the greater part of the said indebtedness was wholly lost to said estate.

The first special master to whom the case was referred found against the complainants on these allegations, as to negligence and omissions of duty on the part of the trustees, and reported that they should not be held liable for the loss. But the chancellor, before whom the cause was then pending, took a different view of the evidence, and, on exceptions to the master's report, found "that said trustees, Alden and Robinson, should have known that said Marsh Harvester Manufacturing Company and Marsh's were insolvent and in failing condition from the time of the death of the said James S. Waterman until their actual failure about July, 1884, and that said trustees did not exercise due and proper diligence to collect, or have secured said undisputed indebtedness to said estate ; and it appearing, had said trustees diligently pressed said undisputed indebtedness to said estate for payment or security, that security might have been obtained therefor ; so it is ordered that trustees Alden and Robinson be charged with the payment of said undisputed indebtedness to said estate."

This order only includes the two notes signed by the manufacturing companies and the Marsh's, the other note being disputed, as hereafter shown. On a re-reference of the case, the master was directed to report the amount of loss on said two notes which he did, finding the amount of loss to the trust estate to be $4328.78, but the Circuit Court of Lee county, as appears from the foregoing extract from its decree, refused to allow the claim for want of jurisdiction.

That a loss to the complainants has been sustained by reason of the failure of appellees to collect the whole amount of those notes is not denied. That they might have been collected by

the use of ordinary business management, and diligence, or se-
cured, is clearly established by the evidence.  We think it is
equally clear that the trustees knew that said parties were
heavily indebted, and liable to fail long before any effort was
made by them to secure, or collect said indebtedness.  The only
finding of the court below on the facts is to that effect.  While
Special Master Loomis, by his report, excuses the conduct of
the trustees, he does not do so on the ground that they were
not negligent, but rather upon the theory, that, from the
relations existing between the testator and the Marsh's, it is
fair to presume that he, if living, would have used no more care
and diligence in enforcing those claims than did appellees.  It
need scarcely be suggested that no such test can properly be
applied to the conduct of trustees.  There may be abundant
reason for believing that Mr. Waterman, though a careful
business man, would much rather have lost the indebtedness
than to have pressed the collection of it, but that furnishes no
excuse for these trustees to neglect or fail to use all reasonable
diligence in the matter.  Mr. Waterman might do with his
own as he pleased, but the duties of these appellees are fixed
by the law, and if they have violated those duties they are per-
sonally liable.

The question, then, as to whether or not the Circuit Court
erred in refusing to hold appellees liable to make good said
loss, must be decided upon the admission that upon the facts
proved and found by that court, in a proper tribunal, they can
be so held, the only question now being, did said court prop-
erly hold that it had no jurisdiction to adjudicate upon the
matter?  That courts of chancery have jurisdiction generally,
on the application of beneficiaries of a trust fund, to charge
trustees with losses occurring through their negligence or mis-
management, is too clear to call for the citation of authorities.
The decree of the Circuit Court seems to have proceeded upon
the theory that inasmuch as the trustees were also executors of
the will of James S. Waterman, a court of chancery could not

compel them to make good the loss sustained by complainants, without interfering with the jurisdiction of the County Court before which the administration of the estate was pending. This we think is a misapprehension. The negligence in failing to secure or collect these claims, it is said, was the negligence of the executors, over whom in the administration of the estate, the County Court has exclusive jurisdiction. The relief sought by this bill is against the *trustees* and not the executors, and if the relief prayed can not be granted by a court of chancery, it must be because complainants have failed to prove such dereliction of duty on the part of appellees in their capacity as trustees as should make them liable, and not because their bill seeks to remove any part of the administration of the estate from the County Court. It does not follow because Alden and Robinson were guilty of negligence in not collecting said indebtedness as executors, they are not also guilty of neglect of duty in that regard as trustees. Suppose other persons had been executors, and they had been guilty of the conduct charged in this bill, causing the loss here complained of, and these trustees, with full knowledge of that misconduct, had not only consented, but themselves contributed thereto, would there have been any doubt as to the power of a court of chancery to charge the trustees, regardless of the liability of the executors, in their settlement of the estate in the County Court? The executors and trustees being the same persons, it is impossible that there should be an act of fraud, or breach of duty by the executors, which is not consented to and acquiesced in by the trustees.

The question is not, in which capacity appellees are liable, and hence cases cited by counsel on either side, discussing the question as to whether funds were held, in one capacity or another, have no application. On the allegations of the bill, and the finding of facts by the Circuit Court, the debts in question have been absolutely lost to the estate, and to that extent the complainants have been injured, and the only question which can now or hereafter arise between these parties is, have

these trustees, by their negligent conduct, become liable for that loss? Nothing which may be hereafter done in the settlement of the estate in the County Court can affect this question, and we are unable to see why these complainants should be sent to that court for the settlement of their rights. We are, therefore, of the opinion that the Circuit Court erred in refusing to take jurisdiction of the question of the liability of appellees for said loss, and that it should have decreed that they make good the same to the trust fund in their hands.

As to the note signed by the Marsh's alone, the first master reported that the makers claimed to have a defense against it, and when the case was again referred, the master was directed to ascertain whether or not a valid defense did exist to said note, and report the same. He reported that a defense was insisted upon, and that, on the testimony of said C. W. and W. W. Marsh, it was established, the only question being as to the competency of those parties as witnesses, to prove the defense, and on that question he found in their favor. We think his conclusion as to their competency was correct. Moreover it does not appear that appellees could have secured or collected that note, however prompt and diligent they might have been. The Marsh's denied that they owed it, and do not say they would have paid or secured it if applied to for that purpose; whereas they admit that the other two notes were undisputed, and could have been secured, if security had been asked for. Appellees should not, therefore, be held liable on said personal note. Both parties object to the apportionment of the costs and expenses of the suit, made by the Circuit Court. We think the order in that regard is quite as favorable to appellees as the facts of the case would justify. They are responsible for the most expensive portion of this litigation, in failing to keep proper accounts of their trusteeship. In the first special master's report is the significant finding that they " made out and exhibited an entirely new book of accounts as executors, also one as trustees, since the filing of the

bill," and that fact, the master well says, " amounts to an admission that prior books are not what they ought to be." There is no claim on their part that they attempted to keep accurate separate accounts of the trust estate. The only apology for failing to do so is that they did not know how to classify the two kinds of property. But they were entitled to counsel, at the expense of the trust estate, to assist them, and if necessary, to the directions of a court of equity in that regard. They certainly had no right to omit a plain, legal duty because they may have been in doubt as to how it should be performed. On that theory they might have neglected that duty during the entire period of their trusteeship. At all events, on the report of the first master, the court found it necessary to again refer the case to a master to make a complete statement of the account, and this, of necessity, greatly increased the costs and expenses of the suit. Appellees can not, therefore, justly complain that they were required to pay a considerable part of the whole expense.

On the other hand, owing to the large amount and variety of assets belonging to the estate, it was a matter of some difficulty at least, as the result of this litigation shows, to determine just what property belonged to principal, and what to income. As before said, appellees were entitled to the advice of counsel, and, if necessary, the aid of the court to properly settle that question. The statement of the account, approved by the court below, is, therefore, for the benefit of all parties interested in the trust estate, those who take the income and those who shall finally take the principal, and it can not be said that either should be entirely exempt from liability for costs and expenses in making it. It is conceded that taxing costs in a chancery proceeding is always within the sound, legal discretion of the chancellor, and that his decree in that regard will only be reviewed where it is shown that there has been an abuse of that discretion. We see no reason for interfering in the present case on that ground.

It is insisted with great earnestness that the account stated by the last special master, and approved by the court, is erroneous in that it fails to charge the trustees with interest on the small amounts which had been charged wrongfully by Alden for railroad fare and commissions on insurance. It is perhaps true that the account is inaccurate in that respect, but the matter is of so little importance that no court ought to entertain the objection as reversible error. We have examined the account, and compared it with the proofs in the case, and are satisfied that it is substantially correct and does justice between the parties, except in the matter of the Marsh indebtedness, as above stated. For that error the decree of the Circuit Court will be reversed, and the cause will be remanded to the Circuit Court, with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded.*