In re GRANADA APARTMENTS, Inc.

**CITY NAT. BANK & TRUST CO. OF CHICAGO v. GRANADA APARTMENTS HOTEL CORPORATION.**

No. 8761.

Circuit Court of Appeals, Seventh Circuit.
June 6, 1946.

As Amended on Denial of Rehearing
July 17, 1946.

Vincent O'Brien and Defrees, Fiske, O'Brien & Thomson, all of Chicago, Ill. (John Merrill Baker, of Chicago, Ill., of counsel), for appellant.

Henry L. Kohn, Edward P. Morse, and I. E. Ferguson, all of Chicago, Ill., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY, District Judge.

SPARKS, Circuit Judge.

This action, by City National Bank and Trust Company of Chicago, referred to hereafter as claimant, is based on a claim made by it as successor Trustee under a trust indenture from the debtor to Chicago Trust Company, as trustee, on September 1, 1928, and duly recorded on October 1, 1928, on behalf of such successor trustee, and of the holders of bonds and interest coupons appertaining thereto, issued and outstanding under the indenture. The Chicago Trust Company, the Central Republic Bank and Trust Company, and eventually the claimant, were successively trustees under this first mortgage trust deed, securing the first mortgage bond issue above referred to, on the Granada Hotel, which was the property of the debtor.

Default in the payment of these bonds occurred prior to August 7, 1933, and on that date a foreclosure suit was begun in the Superior Court of Cook County, Illinois, by the Chicago Trust Company, the then trustee. The decree of sale by the Superior Court was entered December 18, 1936, finding there was due claimant certain prior lien items, consisting of its trustees' and attorneys' fees and certain costs, all incurred in connection with the foreclosure proceedings. During the pendency of the State court foreclosure proceeding, claimant was operating the property not as a receiver or Court officer, but as trustee in possession under the terms of its mortgage indenture.

The petition under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, was filed April 23, 1937, and approved as properly filed on May 17, 1937, at which time claimant, as trustee in possession, by order of the Bankruptcy Court, turned over the

property to the trustee in bankruptcy. During the foreclosure proceedings, a bondholders' committee was organized, which consisted of certain officers of claimant. It tendered a plan of reorganization which was approved on July 15, 1937, and carried into effect. On June 23, 1937, claimant filed a proof of claim in the Referee's office, and on September 14, 1937, it was filed in the clerk's office of the Bankruptcy Court. It is referred to as Claim No. 9, paragraph 5 of which relates to fees of claimant as trustee under the mortgage and the trustee's attorney fees, and court reporter charges as fixed and allowed in the foreclosure decree. The various items of such alleged indebtedness, as set forth in paragraph 5 of the claim are:

Fees for services as successor
   trustee .................... $ 2,560.
Solicitor's fees, less those not
   rendered at date of decree.... 8,250.
Court reporter's and stenogra-
   pher's fees ................ 39.90
                       $10,849.90

On July 8, 1937, the trustee filed general objections to the claim on the ground that it was informal, lacked the original documents and was unfounded and lacking in merit.

On August 30, 1937, claimant filed in the bankruptcy proceeding a report of its operation of the property, as trustee during its incumbency as such. It disclosed the balance on hand which it had theretofore been directed by the bankruptcy court to deliver to the bankruptcy trustee, and asked that court's approval of the account.

To this report and petition, Woods, the bankruptcy trustee, on September 9, 1937, filed what he terms an enlargement of his objections filed on July 8, 1937, together with a counterclaim under which he sought to surcharge and falsify certain items in claimant's account as trustee in possession, and to recover moneys alleged to be due from it.

The remainder of this pleading is divided into three separate headings: (1)
"Facts to Sustain Denial of Claims Made Herein by City National, Its Committee and Its Counsel"; (2) "Additional Facts to Sustain Counterclaim by Debtor Estate"; and (3) "Suggestions Against Account and Report by City National and Its Counsel Filed August 30, 1937 in This Court."

Under the first heading Woods alleged that the decree of the Superior Court of Cook County is void because claimant and its counsel have sought to serve conflicting interests, and that Granada Hotel Corporation was dissolved more than two years before the complaint to foreclose was filed. He further alleged that as claimant was in possession of the property as owner, it cannot charge for its services or those of its counsel.

Under the second heading, Woods alleged that claimant's management lacked reasonable skill and diligence; that the incinerator was not kept in repair; that the auxiliary pump of the refrigeration system was left out of repair and that such system was thereby damaged; that needed repairs were not made, nor were tenants sought for vacant lobby space, and that taxes should have been paid to prevent accruing penalties.

Under the third heading objection was made to specific items charged as expense in claimant's account as trustee in possession, such as payment of a receiver's certificate, payment on a furniture contract, and the Master's fee and expenses incurred in Harris v. Tuttle, a prior bankruptcy proceeding.

By such surcharges and counterclaim, the trustee in bankruptcy sought judgment against claimant for $100,000 which he asked to have trebled under the statutes of Gloucester and Marlborough, which he alleged were a part of the common law of Illinois, and which provide that a trustee who commits waste in the administration of an estate is liable for thrice the resulting damage.

On September 18, 1937, claimant answered the counterclaim, denying its guilt of the alleged acts of malfeasance and misfeasance.

The same firm of attorneys which now represent claimant also represented it at all times herein referred to, including the foreclosure of the mortgage in the State Court, and it also represented the bond-holders' committee.

On account of the services rendered in connection with the plan of reorganization which was approved, two petitions for administrative allowances were filed in the bankruptcy court. The first was that of the bondholders' committee. It asked only for reimbursement of its out-of-pocket expenses incurred by it for the use of the personnel and facilities of claimant. The second petition was by the attorneys for the bondholders' committee for fees for representing the Committee in the 77B proceedings. Both claims were filed on September 14, 1937.

Of the various issues thus raised, the district judge retained and heard evidence on the court trustee's counterclaim and claimant's answer thereto, and that relating to the surcharging and falsifying of claimant's account as trustee in possession.

The petitions of the bondholders' committee and its attorney for expenses and services in connection with the plan, and also the claim of City National and the objections of Woods, trustee, to paragraph 5 thereof, were referred to a special master to take and report the evidence without findings of fact or conclusions of law.

The District Court, in its special findings of fact, expressly stated that its trial of the issues formed by the cross-complaint and claimant's answer thereto constituted a plenary submission. It said: "City National Bondholders Committee and their counsel by pleadings filed, agreements made and evidence offered before the Judge in open court, have all consented to and conducted here a plenary litigation. They have asked the Court to decide a plenary accounting in equity. Upon this record * * * respondents * * * cannot be permitted to say that the proceedings were or are summary. These proceedings are plenary * * *."

The District Court consolidated for hearing the evidence taken before the referee on the fee and expense petitions of the Committee and its counsel on claimant's claim, with the evidence taken before the court on the court trustee's objections to claimant's account and report as trustee in possession and on the court trustee's counterclaim and claimant's answer thereto. On May 2, 1939, the District Court entered its findings of fact and conclusions of law thereon. Because of the inter-relation and conflicting interests of claimant, the bondholders' committee, and the firm of attorneys acting for both, the court found that the fee petition of the Committee and the fee petition of the firm of attorneys for the Committee for administrative allowance, as well as paragraph 5 of claimant's claim, based on the foreclosure decree, should be disallowed and dismissed for want of equity. It further found and concluded that the allegations of the court trustee's answer and counterclaim were fully established by the evidence, and that the specific amounts named therein, with interest from the several respective dates therein were due to Debtor, from claimant, in an approximate total of $100,000. It further found that justice would best be served by merely setting off opposing claims and contentions and leaving the parties to the accounting where they were, with no cash recovery to be allowed the court trustee. On the same day, a decree was entered in accordance with the court's findings and conclusions.

On June 1, 1939, claimant, the Committee, and its attorneys filed a notice of appeal from those portions of the decree which disallowed paragraph 5 of claim 9, and which denied the petitions of the Committee and its attorneys for administrative allowances on account of the services performed and expenses incurred in the 77B proceeding, and which found that the Court Trustee had sustained his objections to claimant's account and his counterclaim. That appeal was docketed here as 7060. In view of our decision in Cowan v. Dickinson Co., 7 Cir., 104 F.2d 771, the same parties filed in this court a petition for leave to appeal from part of the District Court's decree disallowing paragraph 5 of claim 9, and disallowing the petitions of the Committee and its attorneys for administrative

allowances. That appeal was docketed here as 6986. In it a short record was filed, and on appellant's motion, this court consolidated the two appeals for argument and directed that the transcripts of record be consolidated and stand as a single transcript of record in both appeals. The parties were permitted to file a single brief with respect to both appeals. On June 10, 1939, the Court Trustee filed a notice of appeal from that part of the District Court's decree which denied him a money judgment against claimant on the court's finding that the trustee's suggestion for surcharging and falsifying claimant's account and the counterclaim were sustained by substantial evidence. That appeal was docketed here as 7061. In that case the trustee filed his praecipe for additional record in which he specified a few items not included in the record of 7060, but he did not include any of the evidence relating to his attempted surcharge of claimant's account.

This court on November 27, 1939, entered an order in 7061 directing that the transcript of evidence contained in the consolidated records in Causes Nos. 6986 and 7060 be incorporated in the record in the Court Trustee's appeal, 7061, but that the transcript of evidence need not be printed but could be referred to by the parties. That order further directed that the appeals be heard on the same date.

Upon hearing, this court held that the District Court's finding that approximately $100,000 was due from claimant, was not supported by the evidence, and it affirmed that portion of the decree by which the lower court refused to enter a money judgment against it. This court further held that the evidence did not warrant the District Court's finding that the inter-relation of claimant, as Trustee, and the Committee and the attorneys was entered into for the purpose or with the result of keeping the property in court for the benefit of the Indenture Trustee or the Committee, or for any other fraudulent purpose, and that paragraph 5 of claim 9 and the fee petitions should have been allowed.

The Court Trustee applied for two writs of certiorari to the United States Supreme Court. In one he sought a reversal of the holding of this court that he was not entitled to an affirmative money judgment. This petition for certiorari was denied. Woods v. City National Bank & Trust Co., 311 U.S. 676, 61 S.Ct. 43, 85 L.Ed. 435. In the other petition for certiorari, the Court Trustee sought to reverse the holding of this court that paragraph 5 of claim 9 should be allowed and that the petitions for administrative allowances should also be allowed. This petition was granted. 311 U.S. 629, 61 S.Ct. 39, 85 L.Ed. 400.

The basic question before the Supreme Court in that case concerned "the power of the District Court in proceedings under Ch. X of the Chandler Act * * * to disallow claims for compensation and reimbursement on the grounds that the claimants were serving dual or conflicting interests." 312 U.S. 262, 61 S.Ct. 493, 494, 85 L.Ed. 820. The Supreme Court held that the findings of the District Court that the claimants represented conflicting interests were amply supported by the evidence and should be denied compensation, and it reversed this court on its rulings to the contrary. Those claims were for services alleged to have been rendered by claimants with respect to the preparation, the acceptance and the carrying out of the plan of reorganization, together with paragraph 5 of claim 9 which sets forth the claims allowed by the State Court in the foreclosure proceedings, hereinbefore mentioned. The Court further said that they agreed "that on this record recovery on the counterclaim would not be warranted," and that, "The other points raised by petitioner are so plainly without merit that they do not warrant mention." The Court further held that under the Act, such of the expenditures of the indenture trustee, the Committee and its counsel, as benefited the estate should be allowed by the District Court. In this respect the Court said: "Thus where taxes have been paid, needful repairs or additions to the property have been made, or the like, equity does not permit the estate to retain those benefits without paying for them. Such classification of expenses, at times difficult, rests in the sound discretion of the bankruptcy court. The District Court drew no such distinction but proceeded on the theory that reimburse-

ment for all expenses must be denied. But it is not apparent that all of them fall within the prohibited category." The cause was remanded to the District Court for further proceedings in conformity with the opinion.

Subsequently, on May 12, 1941, claimant, as indenture trustee, filed its petition with the District Court to recover out of the trust estate, then under the jurisdiction of that court, all expenses and charges including those of its counsel, reasonably and necessarily incurred in the defense against the Court Trustee's counterclaim, which were successfully defended on appeal in this court and the Supreme Court by claimant. The petition was addressed to the court as a court of equity, and was not drawn under any provisions of the bankruptcy law.

We are first confronted with debtor's contention that this appeal should be dismissed because not prosecuted by leave to appeal but only by notice of appeal. It relies upon 11 U.S.C.A. §§ 642, 650; Dickinson Industrial Site, Inc. v. Cowan, 309 U. S. 382, 60 S.Ct. 595, 84 L.Ed. 819; In re Country Club Building Corporation, 7 Cir., 128 F.2d 36; and analogous Illinois cases.

■■■■■ We are convinced that the claim here in issue is not a claim within the meaning of the Bankruptcy Act, nor is it a petition for an allowance of compensation or reimbursement within the meaning of sections 642, 650 or 656. It is elemental that a trustee is entitled to reimbursement out of the trust estate for its expenses, including attorneys' fees, in successfully defending against a debtor's attempt to surcharge or falsify the trustee's account or to obtain a money judgment against it for acts of misfeasance or malfeasance. The issues on the cross complaint were tried separately in a plenary proceeding, and appealed separately, as a matter of right, and we think correctly so.

However, if it be conceded that this appeal, to be effective, should have been by permission of this court, such defect is not a jurisdictional one in the sense that it deprives this court of power to allow the appeal, and we now allow it. This appeal was perfected within the time required by

either method, and the scope of the review is in no manner affected. See Reconstruction Finance Corporation v. Prudence Securities Advisory Group, 311 U.S. 579, 61 S.Ct. 331, 85 L.Ed. 364.

■■ The issues raised by the counterclaim and answer had no connection with the preparation, adoption or the carrying out of the plan of reorganization, and either party to those issues was rightfully entitled to a plenary hearing before another court of competent jurisdiction, or they could by agreement or acquiescence try those issues in a plenary hearing before Judge Barnes, sitting as a court of equity. They chose the latter and that court warned the parties in no uncertain terms that neither party would be heard to say thereafter that it was not a plenary hearing.

This claim for expenses in defending against and defeating the counterclaim of the Court Trustee was filed and tried after the decision in Woods v. City National Bank & Trust Co., supra. It must be remembered that in the latter case the only issues presented involved the services and expenses of claimant, the Bondholders' Committee and the attorneys of both, with relation to the formation, approval and carrying out of the plan of reorganization. The Supreme Court disallowed those claims but said that any out-of-pocket expenses incurred by them which benefited the estate should be allowed and paid by the estate, and that no such claim which did not benefit the estate should be allowed.

·[5] It is this expression of the Supreme Court which constitutes the basis of this controversy. In other words the debtor claims that because claimant's expense in successfully defending itself against the counterclaim for $300,000 was not beneficial to the estate, it cannot be allowed under the Supreme Court's ruling in the Woods case. We do not so interpret that opinion. It does not expressly say so, nor was the Court there dealing with this kind of a claim. It was there dealing with claims alleged to be beneficial to the estate, and the Court merely held that claims for out-of-pocket expense in such cases must be proved to be beneficial to the estate. Here, the counterclaim was directed against

claimant, not against the debtor or the Bondholders' Committee, for the Court Trustee was prosecuting the case for their benefit. Under such circumstances claimant had a right to defend its liability and its honor. It did so successfully and nothing was recovered on the cross complaint. The basic question involved in the appeal to the Supreme Court concerned the power of the District Court in proceedings under Chapter X of the Chandler Act, 11 U.S. C.A. § 501 et seq., to disallow the claims of the indenture trustee, the Bondholders' Committee, and the counsel for both, for compensation and reimbursement on the grounds that the claimants were serving dual or conflicting interests. As to the other points raised by the Court Trustee, which included those raised by his counterclaim, the Court said they were "so plainly without merit that they do not warrant mention." Yet debtor's counsel urges that claimant cannot recover for his out-of-pocket expenses, including a reasonable attorney fee, occasioned by its successful defense against the counterclaims, merely because the debtor was completely unsuccessful in the result of that issue.

■ The Special Master found, and the District Court approved the finding, that the attorney fee of $15,000 for defending against the counterclaim was reasonable, and that claimant's items of out-of-pocket expense, except an item of title expense for $1135.30, which has been paid, were proper items of allowance. Under broad equitable principles those findings are certainly sound. Patterson v. Northern Trust Co., 286 Ill. 564, 122 N.E. 55; Waterman v. Alden, 144 Ill. 90, 32 N.E. 972; Scott on Trusts, Vol. 2, sec. 188.4; Perry on Trusts (7th Ed.), sec. 894; Bogert on Trusts, Vol. 4, § 805.

■ The fact that the issues on the counterclaims were tried before the bankruptcy court, at a plenary hearing, with the knowledge and consent of the parties, did not alter the character of that proceeding. It remained a suit in equity and was governed by equity rules. In re Rockford Produce and Sales Co., 7 Cir., 275 F. 811; Board of Trade of Chicago v. Johnson, 7 Cir., 283 F. 374. In defending against the counterclaim, claimant was not engaged in maintaining its claim 9, nor the fee petitions of the Bondholders' Committee and its counsel. It was merely engaged in defending itself against a plenary action for damages, and under the well-recognized general rule, it was entitled to reimbursement of its expense so incurred.

Appellee recognizes this general rule, but it contends that the ruling in Woods v. City Bank Co., supra, constitutes an exception thereto. For the reasons above stated we think that that ruling does not create an exception to the general rule, and that so much of the claim as found by the Special Master and approved by the District Court to be proper allowances to claimant for expenses in its defense to the counterclaim should be paid out of the assets of the estate. Likewise there should be an allowance out of those assets for the attorney's fee of claimant's attorneys, which both the Special Master and the District Judge found to be reasonable for the services rendered by them in its defense to the counterclaim.

However, the Master found that if the court concluded that claimant was entitled to recover its costs incurred in defending itself against the counterclaim and surcharge, then only 35% of the attorneys' fees should be allowed because, " * * * under approval and order of this Court, the property subject to reorganization was sold in the year 1942, and the return to holders of certificates of beneficial interest approximated 35% of their capital investment with no interest from the year 1928."

That this property was ever sold is not supported by any evidence in this record. The facts as stipulated are in substance as follows: 5357 shares of Granada Participation Certificates were issued under the trust agreement by the trustees of the property reorganized in this proceeding. On March 13, 1941, 3572.78 shares were owned or controlled by a group represented by Fred E. Law, who is one of the parties to this proceeding. On that date, Law offered on behalf of this group to purchase all outstanding shares of the Participation Certificates, or capital stock, as the unit certificates were referred to in Law's letter of that date. Thereafter, the trustees were authorized by the District Court to sell all

of the outstanding shares of capital stock of Granada at a price of $35 a share for each share represented by outstanding Participation Certificates. At that time the number of outstanding shares was 1759.48, of which 53.74 had no beneficial owner and had been issued in excess of the requirements for the reorganization. Thus the total outstanding shares including those held by the Law group were 5303.26. On July 9, 1941, the Trustees sold and delivered to Fred E. Law, at a price of $35 per share, all the capital stock of Granada Apartments Hotel Corporation numbering 1759.48 shares.

This certainly did not constitute a sale of the entire property, however, if it did, no authority has been cited to us, and we have found none, which in such event would authorize a deduction from the reasonable value of claimant's attorneys' fees for services rendered for claimant in its defense against the Trustees' counterclaim which Mr. Law and his associates were greatly interested in sustaining.

The order approving the Master's report is reversed and the cause is ordered remanded to the District Court with instructions to enter an order directing the Granada Apartments Hotel Corporation to pay to City National Bank and Trust Company of Chicago the amounts prayed for in its petition, after deducting the title expense in the sum of $1135.30 which has been paid to City National, and decreeing that City National has a lien on the property of Granada Apartments Hotel Corporation for the payment thereof. In all other respects the District Court's ruling approving the Master's report is affirmed.

This cause was argued before Evans and Sparks, Circuit Judges, and Lindley, District Judge, on April 17, 1946. On the same day we held consultation on the case and agreed that it should be decided as it is here written. On April 30, 1946, Judge Evans became seriously and dangerously ill and has since been confined in the hospital. He is unable at this time to be consulted on business matters. Under these circumstances the opinion is announced as a majority one.