In re ALBERT DICKINSON CO.

COWAN et al. v. DICKINSON IN-
DUSTRIAL SITE et al.

No. 6816.

Circuit Court of Appeals, Seventh Circuit.
May 22, 1939.

Rehearing Denied June 24, 1939.

Samuel E. Hirsch, Abraham Greenspahn, and Julian H. Levi, all of Chicago, Ill., for appellants.

Benjamin Wham and Walter A. Wade, both of Chicago, Ill., and Winston, Strawn & Shaw, of Chicago, Ill., for appellees.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

This appeal is one of several taken from an order entered in the reorganization of the debtor, Albert Dickinson Co. In the order complained of the court fixed the compensation of attorneys and a bondholders' protective committee as follows:

Blumberg, Samuels and Stone, attorneys for petitioning creditors ...................... $ 3,000

Glenn, Real & Browning, attorneys for $19,000 of bonds..... $10,000

Poppenhusen, Johnston, Thompson & Raymond, attorneys for committee ................. $13,000

Edelson, Edelson & Wise, attorneys representing $20,000 of bonds .................. $ 6,000

Rudolph G. Mueller, Secretary to Committee ............... $ 2,000

Greenebaum Investment Co., depositary ................... $ 2,443.75

Mayer Karasik, for disbursements ...................... $ 1,816.90

Henry Fechheimer ........... $ 290

Benjamin H. Miller, attorney for creditors ............... $ 500

Percy Cowan, Greenebaum, Wade and Levi, Members of the first mortgage bondholders' committee representing 70% of the bondholders...... $ 2,000

Carl R. Chindblom, special master ........................ $ 275

William J. Snyder, court reporter ................... $ 389.75

The appellee appealed from the allowances to all the aforesaid parties except the last three. The allowance to the firm of Glenn, Real & Browning, has been heretofore affirmed (Appeal No. 6842). The respondents—Karasik; Fechheimer and Miller; Poppenhusen, Johnston, Thompson & Raymond; Edelson, Edelson & Wise; Blumberg, Stone & Samuels— settled their differences while the appeal as to them was pending. Payments in full were made to Mueller, Secretary to the Committee, and Greenebaum Company, depositary. Of the several allowances of fees challenged there remains but one undisposed of, to-wit, the claim of the bondholders' protective committee, composed of Percy Cowan, Edgar N. Greenebaum, Walter A. Wade, and Julian H. Levi.

The District Court allowed this committee the sum of $2,000. It asked for and here contends that it should be allowed the sum of $20,000.

The appellee argues that the appeal should be dismissed because not taken as the statute provides. It does not seriously dispute the asserted insufficiency of the allowance, but argues that there was not such abuse of discretion as to warrant our disturbing this award.

The Chandler Act was approved June 22, 1938, and became effective September 22, 1938. The petition for reorganization

of debtor was approved September 10, 1934. The order from which this appeal was taken was entered October 26, 1938. The District Court never made any order declaring the Chandler Act applicable to these proceedings nor did this court. No application for such order was in fact made to either court.

Appellants, on November 25, 1938, and within thirty days from the entry of the order complained of, applied to this court for leave to appeal. We allowed the appeal. Appellee proceeded in the same way in appeal No. 6822. It applied to this court for leave to appeal from said order, on December 5, 1938. Its application was denied by this court.

■ As the law stood prior to the enactment of the Chandler amendment, it was well settled that an appeal from an order allowing compensation to attorneys and other parties entitled thereto in these reorganization cases rested with the Circuit Court of Appeals, which was required to exercise a discretion. Shulman v. Wilson-Sheridan Hotel Company, 301 U.S. 172, 57 S.Ct. 680, 81 L.Ed. 986.

The committee's petition to appeal from the District Court's order of October 26, 1938, was granted by this court on December 13, 1938. Appellee contends that the appeal should have been perfected pursuant to Section 24, subds. a, b, of the Chandler Act, 11 U.S.C.A. § 47(a, b) which reads:

"The Circuit Courts of Appeals of the United States * * * are hereby invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact: * * * Provided further, That when any order, decree, or judgment involves less than $500, an appeal therefrom may be taken only upon allowance of the appellate court.

"b. Such appellate jurisdiction shall be exercised by appeal and in the form and manner of an appeal."

Section 250 of the Chandler Act, 11 U.S.C.A. § 650, reads:

"Appeals may be taken in matters of law or fact from orders making or refusing to make allowances of compensation or reimbursement, and may, in the manner and within the time provided for appeals by this Act [title], be taken to and allowed by the circuit court of appeals independently of other appeals in the proceeding, and shall be summarily heard upon the original papers."

Two other provisions of the Chandler Act are worthy of consideration:

Sec. 276.c. "The provisions of sections 77A and 77B of chapter VIII * * * approved July 1, 1898, shall continue in full force and effect with respect to proceedings pending under those sections upon the effective date of this amendatory Act, except that— * * *

"(2) If the petition in such proceedings was approved more than three months before the effective date of this amendatory Act, the provisions of this chapter shall apply to such proceedings to the extent that the judge shall deem their application practicable * * *." 11 U.S.C.A. § 676(c) (2).

Section 6.b. provides:

"Except as otherwise provided in this amendatory Act, the provisions of this amendatory Act shall govern proceedings so far as practicable in cases pending when it takes effect; but proceedings in cases then pending to which the provisions of this amendatory Act are not applicable shall be disposed of conformably to the provisions of said Act approved July 1, 1898 * * *." 52 Stat. 940, 11 U.S.C.A. § 1 note.

Counsel are unable to agree what law applies. While the appellee followed the same practice as the appellants, it now argues that appellants' appeal should be dismissed.

■ Construing all of the aforesaid sections together with the Bankruptcy Act in force before the Chandler Act, we conclude:

(1) The provisions of the Chandler Act govern this appeal.

(2) Where the court has not had occasion to pass upon the practicability of applying subdivision (2) of section 276(c), said subdivision (2) should be ignored.

(3) Because "this amendatory Act" (The Chandler Act) elsewhere expressly covers the subject of appeal, section 6(b) does not govern.

(4) Section 250 of the Chandler Act, being a specific provision, applies to appeals from orders fixing compensation or

disbursements to attorneys who render services. The maxim *generalia specialibus non derogant* controls.

(5) Appeals from an order making an allowance of compensation or reimbursement to those entitled thereto, or who make claim for such compensation and are refused it by the District Court, are allowed only in the discretion of the Circuit Court of Appeals.

(6) All other appeals from orders or decrees entered by the courts of bankruptcy, except from judgments involving less than $500, must be taken as other appeals in equity suits, namely, as provided for by section 73 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

Applying these conclusions to the facts in the instant case, we conclude that the appellants properly sought the allowance of their appeal on this court.

The motion to dismiss the appeal must therefore be denied.

On the merits of the appeal we are confronted by a fact question,—the legitimate range of judicial discretion.

The debtor is a company which for fifty years successfully conducted a large business in seeds. Its sales in a single year reached an aggregate of $15,000,000. Changes in method of distribution and the financial upset and business depression of the early '30s proved too much for it to withstand, and section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, when that amendment was enacted, became a harbor into which it sailed for rest and repairs.

At the time its outstanding bonded indebtedness was $1,900,000, which was in default; it owed $300,000 in taxes; its real estate was *appraised* at $2,500,000.

A bondholders' protective committee was immediately created by holders of substantial amounts of bonds, to-wit, $60,000, $50,000, $40,000, and $10,000.[1] Mr. Greenebaum, a member of the house of issue, was the fifth member of the committee.

It and the debtor immediately gave attention to a plan of reorganization which was subsequently submitted to the security holders. It contemplated a loan of $750,000 from the R. F. C. It failed because debtor was unable to negotiate the loan on terms which it could meet.

The committee hired auditors and a management engineer and made every effort to submit a more feasible plan of reorganization, acceptable to debtor and security holders. Several attorneys, representing smaller bondholders, cooperated. The problem was complex and perplexing. There were fewer petty and captious objections to proposals than usual, although there were differences of opinion. Postponements and delays occurred. Much time was necessarily devoted by all to the problem of reorganization which presented as many business as legal questions.

Finally, a proposal which met with favor was submitted, was somewhat modified, and later approved by the security holders and the court. The new plan provided, among other things, for debtor's raising $150,000 from an outside source, a reduction in the amount of floor space used by it, and the leasing of the balance and the securing of said lease. These were the outstanding advantages of the plan for which all parties claim credit, but of which we think it might be better said—all parties contributed in greater or less degree.

When the plan was finally approved, appellants represented 70% of the security holders, or more than $1,250,000 (par value) of the bonds. They assert that in this particular case the bondholders' committee was as active as the attorneys for the committee or as the attorneys for any other party; that their voice was more authoritative, because without their approval no plan could become effective; that they were the party most instrumental in bringing $150,000 of additional capital and the securing of a paying lease, which meant revenue in the future. On this committee were two able lawyers.

We fully sympathize with the District Court in its effort to conserve the property for the creditors. To do this and at the same time do justice to those who render meritorious service in a reorganization of this kind is no easy task. Differences of opinion as to the nature and value of services among the participating attorneys are well nigh inevitable.

We fully agree the amount of securities represented by a group or an attorney should not be the sole, or even the determining, factor in fixing the amount of compensation. Nor would we, on the other hand, by any means ignore it when passing on fees asked in most cases. It may and often does help in appraising the

---

[1] The par value of the bonds must not be confused with actual value.

good faith, as well as the value of the services.

Another disturbing factor, present in many cases, and not entirely absent here, is the apparent duplication of services for which compensation is sought.

■ Appellants concede that in making the allowances, the trial court exercised a discretion, and that discretion should not be disturbed unless improvidently exercised. In other words, to disapprove, we must find there has been an abuse of discretion.

What is judicial discretion? How is its abuse determined?

At best, it is a somewhat relative term. No standard or measuring stick has been or can be devised that may be successfully applied in all cases. It and the words used to define it are somewhat elastic. In Newton v. Consolidated Gas Co., 259 U.S. 101, 105, 42 S.Ct. 438, 439, 66 L.Ed. 844, the Court spoke of it as follows:

" * * * Discretion within intendment of the rule is a judicial one; it does not extend to arbitrary and unreasonable action; and our review is limited to the question of its improvident exercise."

In the last analysis it comes down to a question of the extent of the difference between the trial court's or the fact trier's judgment and the judgment of the reviewing tribunal. In bankruptcy cases it may at times be measured by the difference between the judgments of a master or a referee and that of the District Court. In the Matter of Edward S. Duvall et al., 7 Cir., 103 F.2d 653, decided April 28, 1939.

It must be conceded by all that in matters where differences are not large, we must hold the District Court's judgment is supreme. But we are not much nearer the goal of our inquiry—for our study merely shifts to what are the limits of said range.

At times we can define a term best by illustrating what it is not. When the distance between·the amount allowed and the amount claimed is so great that we can not reconcile them, and the good faith rendition of meritorious service is admitted, we have a case which calls for modification.

Somewhat similar questions arise in tort actions wherein excessive or inadequate damages are allowed by a jury. Refusal to disturb the verdict of a jury or the judgment of the trial court thereon, when the amount is either grossly excessive or grossly inadequate, because the amount of damages is for the jury to decide, is an avoidance of judicial responsibility. The rule is the same whether the case involves *fees* or awards in damage actions. The duty to act is as clear and as impelling in one case as in the other.

The reorganization of this debtor was for the benefit of its creditors. Its past history, its large real estate holding, its value as a going concern, and other property of value to it in the operation of its business, should be saved if possible. In short, the conservation of the property was essential to the protection of the bondholders.

In order that such a reorganization take place, it was necessary for the bondholders themselves, or for attorneys representing them, or both, to render certain services. That there is much false and foolish action of no benefit to the debtor estates and devoid of intelligence and good faith in many cases brought under Section 77B, does not affect the rule that compensation is due and should be awarded to those who render services of merit. The heavy expense of a reorganization seems an unavoidable consequence of our doing business through large corporations where large sums of money are borrowed from investors who are not well informed as to the character of the security issued to them. But it was a condition that confronted these bondholders when the mortgagor defaulted in its interest payments, and they then learned that their mortgage bonds failed to fully measure up to their once-held beliefs,—a condition that demanded action. We can not too severely condemn the action of those who attempt to profit out of the investors' distress and their lack of experience.

The expenses of foreclosures, reorganizations, and receiverships, heavy, yet unavoidable in any case, have, in some instances, been multiplied by studied efforts to delay proceedings and prolong receiverships, by unnecessary duplications of services by many counsel, by frivolous objections made by bondholders' counsel in an effort to create nuisance value and by other methods familiar to those who have had intimate contacts with reorganization proceedings brought under the Bankruptcy Act.

Avoidance of this undesirable situation can only be successfully attained by the court announcing early in the proceedings that for duplications of services no com-

pensation will be allowed. In fact, we see no way of avoiding embarrassment and trouble save by the court's informing some of the attorneys, committees, and other agencies that their services will not be paid out of funds in the court's possession. In the absence of such action, the questions of the total amount of fees and distribution of said fees among the many applicants will surely arise to perplex those who are responsible for the reorganization.

In the instant case we have no such embarrassing situation. All of the allowances were modest. The allowance to bondholders' committee is the only item of which we have doubt. It was disposed of by a well-nigh complete rejection because the court entertained the view that bondholders' committees are, generally speaking, useless instrumentalities that accomplish little or nothing or which do nothing of benefit to the reorganization. This may be true in many cases, but it does not necessarily constitute a universal practice. According to members of the committee, it was not true in this case and the record supports this statement. It came into existence upon the urgent request of holders of sizable numbers of bonds. Others joined them until seventy per cent. of the holders of the entire bond issue spoke through this committee. Two of its members were lawyers with experience in 77B proceedings. Had they merely sought to multiply fees, they could have appeared separately and represented individuals as other counsel in this case appeared for smaller groups of creditors. Their refusal to thus stultify themselves commends their present position to our favorable consideration.

Unless the court is justified in refusing the committee any compensation, the services rendered necessitated an allowance in excess of $2,000. To compensate each of four members representing bonds of the face value of $1,300,000, for three years' work, at a total of $500 each, seems grossly inadequate.

The range within which the trial judge's discretion has free and uncontrolled play must have outside limitations, —below and above which it can not go. That this committee was entitled to some compensation is conceded. The fact that the court made it an allowance is proof the court so concluded. It, of course, should not be denied compensation on the theory that most committees are supernumeraries and of no value in the reorganization of the debtor, if in truth and fact it showed itself to be a serviceable agency working in good faith for those who were vitally interested in recovering the largest possible amount for the creditors.

We are not unmindful that a dominant rule governing the allowance of fees is the one which limits the total amount of all fees to what the enterprise can reasonably bear. Of course, this does not mean that the total allowance should be divided to the total exclusion of any deserving applicant who has rendered meritorious and valuable services, and another claimant rendering like services, benefited. Testing the allowances by this standard no fault can be found with the total allowances.

The allowance of $2,000 to the bondholders' committee, upon what is clearly shown to be the services by them rendered, is so much below the actual value of its services and the benefits which accrued to the debtor, that it amounts to an abuse of discretion. Comparing allowances to others who appeared in the action and upon the showing of services rendered, we are convinced that the allowance should not have been less than $10,000 In designating $10,000, we are not fixing the actual value of that service, but stating a sum below which an allowance can not be allowed to stand.

In other words, the range within which the judicial discretion may operate has the sum of $10,000 for its minimum. As in the case of excessive verdicts, the appellate court fixes the amount above which a verdict or judgment will not be allowed to stand. So here we fix the minimum.

The decree is modified by an allowance of $10,000 to the bondholders' committee. As modified, it is affirmed, appellants to recover their costs.

### On Petition for Rehearing.

Appellee, on this rehearing, strenuously assails the correctness of that part of our opinion which holds that appeals from orders making provision for compensation of counsel are allowable only in the discretion of the Circuit Court of Appeals. Inasmuch as this pronouncement was for the purpose of settling the practice, we have given the matter further consideration.

The deference we owe to, and the respect we have for the views of, the Second Circuit Court of Appeals, which reached a

different conclusion in London v. O'Dougherty, 102 F.2d 524, have added to our anxieties.

In reaching our conclusion we were guided by what we believed to be the intention of Congress in enacting the bankruptcy legislation, namely, the desire to expeditiously administer the estates of insolvents. The more recent amendments to the general bankruptcy act, which for the purpose of convenience might be called the reorganization provisions as distinguished from the liquidation sections of the old act, should be similarly construed. Expedition in the reorganization of a debtor is as essential for the protection of creditors as is expedition in liquidations under the old bankruptcy act.

One of the possible methods of delay is through appeals. While the right to apply for an appeal in bankruptcy cases may be as important as in other suits, experience has demonstrated that there is a possibility for the misuse of the said right of appeal where reorganization of a debtor with many creditors holding valuable assets is about to be effected. Such a situation affords unusual opportunities for one avariciously inclined to create a nuisance value for a claim otherwise lacking in merit.

In other words, appeals may tie up the liquidation of the estate or the reorganization of the debtor, although the amount involved is relatively small.

It seems, for this reason, Congress has, in the old act as well as in the amended act, guarded against abuse by providing that the right of appeal shall not be an absolute one but, in some cases, allowable only in the discretion of the court of appeals.

Section 250 of the Chandler Act, 11 U.S.C.A. § 650, carries such an intention on the part of Congress. In construing this section, it is significant, first, that it deals specifically and exclusively with appeals taken from orders allowing compensation or reimbursements, and, second, that it provides expressly for limitation of time within which the appeal may be taken *and* it also provides that such appeals "be taken to *and allowed by the circuit court of appeals* independently of other appeals in the proceeding, and shall be summarily heard upon the original papers." In other words, Congress, by this section, was dealing specifically with the subject of appeals from an order allowing compensation to those who had helped in the reorganization of the debtor.

The last clause squarely indicates the necessity of prompt disposition of the appeal. The clause "allowed by the circuit court of appeals" can not be ignored. It suggests an intent to avoid frivolous appeals and appeals for purpose of delay. It necessitates the exercise of a discretion by the Circuit Court of Appeals to the end that delays may be avoided. At the same time, it protects the rights of those who are sincerely convinced that an allowance was either inadequate or extravagant. Dealing as it does, specifically with this subject-matter, it should be construed as exclusive.

The petition for rehearing is denied.