In re GRANADA APARTMENTS, Inc.

CITY NAT. BANK & TRUST CO. OF CHICAGO et al. v. WOODS et al., and three other cases.

Nos. 6986, 7060, 7061, 7186, 7086.

Circuit Court of Appeals, Seventh Circuit.

March 26, 1940.

Rehearing Denied May 7, 1940.

836

Vincent O'Brien, John Merrill Baker, and Tracy W. Buckingham, all of Chicago, Ill., for City Nat. Bank & Trust Co. of Chicago and others.

Weightstill Woods, of Chicago, Ill., for himself and others.

Weightstill Woods and Arthur Abraham, both of Chicago, Ill., for Granada Apartments Hotel Corporation and others.

Louis L. Dent, George M. Weichelt, John P. Hampton, and Roger D. Doten, all of Chicago, Ill., for Indemnity Ins. Co. of North America and others.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

These appeals are from orders in a corporate reorganization proceeding (77B, Bankr.Act, 11 U.S.C.A. § 207) and are so closely related that they may appropriately be considered and disposed of in one opinion.

Granada Hotel Corporation (predecessor in title of the debtor) was organized in 1924, and its bonds marketed by Chicago Trust Company as the house of issue. On September 1, 1928, the indebtedness was refinanced and a trust deed in the nature of a mortgage made to Chicago Trust Company, as trustee, to secure payment of first mortgage bonds of $525,000, $300,000 of which were underwritten by Cody Trust Company, and $200,000 by Chicago Trust Company. Another trust deed was made to Chicago Trust Company to secure a second bond issue in the amount of $360,000. The premises described in the trust deed consisted of a furnished apartment hotel, operated as such. Since 1928 there have

been numerous successor trustees and much litigation. The hearing in the court below, which culminated in the orders complained of, covered all this period and apparently included a review of the acts and doings of all persons, corporations and attorneys, as well as the various matters of litigation had concerning the property.

The record is of such volume that we find it difficult to make even a summary of the situation in an opinion of reasonable length. It is almost as difficult to obtain a clear picture of the involved issues. Appeals 6986 and 7060 are the same, the former allowed by the District Court and the latter by this court. The appellants in these appeals, in addition to City National Bank and Trust Company of Chicago, (herein referred to as "City National") are a bondholders' protective committee (herein referred to as the "committee") consisting of Peterson, Riddle, Sturm and Kilmer, and the legal firm of Defrees, Buckingham, Jones and Hoffman.

Subsequent to the approval of a plan of reorganization, submitted by the committee, City National, on September 14, 1937, filed its proof of claim in the amount of $10,849.90 alleging said indebtedness was established by decree of the Superior Court of Cook County, Illinois, entered December 18, 1936, in a certain foreclosure proceeding, in which City National was complainant and the debtor corporation, defendant. The itemized statement of the claim as fixed and allowed by the Superior Court, was as follows: Fees of City National as Trustee, $2,570; solicitor's fees for City National, $8,250; and court reporter's fees, $39.90. At the time the debtor's property was turned over to the court trustee, the City National had in its possession the sum of $1,608.56, which it applied to its claim, thereby reducing the same to the sum of $9,241.34 as shown by the amended claim. August 30, 1937, City National filed a report of its stewardship as trustee, and on September 9, 1937, the court trustee filed objections to the report and claim as filed by City National. Thus are raised the more important issues of the case. The objections are in the nature of a counterclaim, charging divers acts of mismanagement and asserting that City National was entitled to no compensation either for itself or its attorneys. Answer was filed to this counter-claim, denying specifically its numerous allegations.

The committee and the attorneys, on September 14, 1937, filed their claims for reasonable compensation and fees, to which the court trustee objected. In the decree appealed from, entered May 22, 1939, the court disallowed in toto all claims made by City National, the committee and the attorneys. The action of the court in this respect is here involved. As stated, the investigation, inquiry, or whatever it may be called, upon the issues thus made, assumed a wide range, including everything which transpired in connection with the debtor property from the time of the first bond issue down to the hearing. Although we are convinced that much of what was heard and considered was irrelevant and immaterial to the issues before the court, it seems important to relate some of the more salient matters.

On July 25, 1931, Chicago Trust Company, the original indenture trustee, consolidated with Central Trust Company of Illinois to form Central Republic Bank and Trust Company, which later changed its name to Central Republic Trust Company, and, by the terms of the trust deed thereupon became trustee. August 7, 1933, the first mortgage being in default, Central Republic Trust Company filed a cross-complaint to foreclose a junior mortgage in the Superior Court of Cook County, Illinois, in which William A. Thuma was plaintiff and Granada Apartments, Inc., and all others having any interest in the mortgage property, were defendants. In those proceedings, Chicago Title and Trust Company was appointed and acted as receiver. In the meantime, and on November 20, 1934, a receiver was appointed for Central Republic Trust Company by the Auditor of Public Accounts of the State of Illinois. The Chicago Title and Trust Company, named as successor trustee to the Central Republic Trust Company, refused to accept and, thereupon, on January 3, 1935, City National was appointed successor trustee under said trust deed by the Superior Court of Cook County in said foreclosure proceedings, and duly accepted such appointment.

Whereupon, the City National was substituted in the place of Central Republic Trust Company as cross-complainant in the mortgage foreclosure. On February 11, 1935, the receiver of the Central Republic Trust Company filed his financial report, whereupon it was ordered to pay the cash on hand, in the sum of $9,-995.46 to City National, and such receiver and Central Republic Trust Company were discharged from any and all liability under and in connection with said trust deed. The mortgage foreclosure in the state court pursued the usual course, and after a report by the master, the court, on December 18, 1936, entered a decree of sale in which was found the amount due upon the indebtedness secured by the trust deed, including the fees for City National as alleged in its claim now before us.

City National continued in possession of debtor's property until the 17th day of May, 1937, when it surrendered possession to the court trustee (appellee). Subsequently, as stated heretofore, City National filed a report showing receipts and disbursements from the time of its appointment as trustee in the Superior Court of Cook County to the time it surrendered possession.

The court entered an extensive résumé of the history of the debtor property, covering 24 pages of the record, under what is designated as "Findings of Fact and Conclusions of Law," in which appellants and others are charged with having knowingly participated in a conspiracy to defraud the bondholders. The findings are of such serious character that we have read and reread them, and searched the record with a view of endeavoring to ascertain if they find support. Although the result of this litigation must necessarily depend upon such determination, we have received only meager assistance from the court trustee. Instead of giving us references to the record which support the findings, the trustee is content to consume 28 pages of his brief with a verbatim copy of such findings. He then assumes that they are supported, and predicates his argument upon such assumption. A good portion of his argument is devoted to the Statute of Gloucester, with supporting authorities, in an effort to demonstrate that the court trustee is entitled to recover from City National in triple amount for all damages and waste for which the latter was found liable. It is argued that the District Court having found the City National liable for damages in the sum of $79,930.93, that, therefore it is liable for three times that sum, viz.: $239,792.79. The remoteness of this argument is apparent. It is an attempt to cross the bridge long before it is reached. The first thing we must determine is whether the findings find any substantial support in the record, and so we revert to that phase

of the situation. It seems necessary to copy Finding 55, which we set forth in a footnote.[1]

We shall discuss briefly each of these items, which will require some statement of facts not related heretofore. In connection therewith, we think it important to keep in mind that City National served only as trustee from January 3, 1935, to May 17, 1937, and so far as we are able to ascertain, prior to the time of this appointment and its participation in the state foreclosure proceeding, had no control over and, we think, no connection with debtor's property. It is true that the committee, organized in 1933, one of whose members was an officer of the City National, had their office and performed their functions in quarters provided by the City National, and employed the services of a division of the City National, whose business was to furnish service to committees representing bondholders. While there may be valid criticism of the relation thus shown, we do not see how that, in itself, could affect the legal duties or obligations of City National, and certainly not prior to the time the latter assumed the duties and responsibilities as trustee.

We shall now consider each of the items in the finding set forth in footnote 1. It is apparent that Item I is dependent upon the result of these appeals.

Item II charged to City National, has to do with an incinerator installed in debtor's property by the court trustee. We find no evidence that the necessity for this installation was the result of negligence or mismanagement on the part of City National.

Item III, in the amount of $1,990.86, includes a number of items, the largest of which is $1,608.56. In the proceeding in the Superior Court of Cook County, referred to heretofore, an accounting was had between City National and the debtor. By the decree entered in that court December 18, 1936, the account was adjudicated, and the City National was expressly authorized to apply said sum upon the indebtedness due it. It appears to be the position of the court trustee that the order of the Superior Court was void. We conclude to the contrary and, that City National properly applied this amount to its claim as authorized by that court. The balance of Item III amounts to $382.30, and is composed of a number of small items set aside by City National for the payment of taxes and other obligations for which it contends its liability had become fixed. We do not think it necessary to go into

1 55. The evidence shows that the following items are due from City National Bank and Trust Company to Debtor Estate and the Court Trustee, together with interest at five per centum on each item from the date of its accrual and that the accounting by City National should be surcharged therewith:

I. All costs of this proceeding including trial counsel fees for Court Trustee and cost of special Auditing and Engineering services, expense for exhibits and witness fees, and extra services of the Court Trustee caused to the Debtor Estate, in such sums as the Court may determine upon hearing as to same.

II. Restoration of incinerator (waste and neglect) August 1937......................$ 500.00

III. City National without making a substantial adverse claim, refused to pay over cash funds pursuant to Court order and demand made by the Court Trustee May 1937............$ 1990.86

IV. Without authority City National consented to and made wrongful payment from rentals upon receiver's certificate......$ 7500.00

And also cause payments to Pick successor August 1933...$13000.00

V. City National charged for management fees as trustee in possession; never earned, before May 1937...................$11365.42

VI. Without authority City National paid court costs, fees and legal expenses never earned, February 1936..............$10186.65

VII. City National paid valet commissions to Arlington, earned by Granada rental space, before April 1937............$ 250.00

VIII. City National without authority willfully reduced and failed to collect or pay over rentals due from Arlington for interhotel services from January 1, 1933.................$19170.00

IX. City National neglected and failed to seek tenants for ballroom, solarium, writing room and director's room, all space adjacent to lobby............$10968.00

X. Needless tax penalties (admitted by City National petition) resulting from failure to apply funds to taxes, before May 1937...................$ 5000.00

each one of these small items. If the items making up this sum of $382.30 have not now been disbursed, then it is our conclusion that such item should be paid over to the court trustee, but if they have been disbursed by City National, then there is no liability to the court trustee.

Item IV. The amounts of $13,000 and $7,500 charged to City National in this item were paid in conformity with the decree of the Superior Court. In fact, the former was disbursed in August, 1933, by Chicago Title and Trust Company, the then receiver. At this point, it seems pertinent to make brief reference to a matter which concerns this disbursement, and which the court trustee describes as the "heart of the present controversy." When the first bonds were issued in 1924, and again when reissued in 1928, it is contended, but disputed that those responsible for their issuance, in a prospectus issued by them, represented to the purchasers of such bonds that the furniture and fixtures of the debtor property were included in the mortgage as security. Assuming such misrepresentation was made, we think it is wholly immaterial to the issue here involved. How or in what manner the City National could be chargeable with a fraud committed at that early date, with which they had no connection or concern, we are not able to ascertain. The fact remains that the owner of the debtor property purchased the furniture and fixtures from Albert Pick and Company upon the security of a chattel mortgage. The validity of this chattel mortgage was in dispute and its foreclosure resisted. The litigation with reference thereto was terminated by a decision of the Appellate Court of Illinois up-. holding its validity. Thuma v. Granada Hotel Corp., 269 Ill.App. 484. In the meantime, Pick had assigned his mortgage to the International and Industrial Securities Company. The mortgage was foreclosed and a deficiency decree entered in the sum of $22,500. The facts were presented to the Chancellor of the Superior Court, all the parties in interest being present, and the court concluded that rather than permit a removal of the furniture and fixtures and thus interfere with the tenants and the income from the property, that the deficiency decree should be satisfied. The court therefore directed that $11,000 should be paid from funds in the hands of the receiver and, in addition, $2,000 as attorney fees to the indenture trustee on account of services in connection with the chattel mortgage litigation. In addition, the receiver was directed and did issue its certificates in the amount of $11,500, which were purchased by the Indemnity Insurance Company of North America. These were reduced through payments by the receiver, Chicago Title and Trust Company, to $7,011.01, and when Central Republic Trust Company took possession of the property on March 22, 1934, it was ordered by the state court to assume and pay that balance. It must be kept in mind, so far as City National is concerned, that the decree of the state court authorizing such expenditure and the issuance of the receiver's certificates, was entered August 11, 1933, more than a year prior to its appointment as trustee. When it took possession January 3, 1935, it took the property subject to the lien of these certificates. September 22, 1936, it paid upon the same, $2,500, and on February 23, 1937, $511.01, leaving a balance of $4,000 due on such certificates. The plan of reorganization provided for the payment of this $4000 to the Indemnity Insurance Company. While it is charged to the City National in this Item IV, it also represents the same item as is involved in Appeal 7186, referred to hereinafter. In order to sustain the charges in Item IV, it is necessary, of course, to hold that the proceeding in the state court authorizing such expenditures and the issuance of receiver's certificates, was void. We have, however, in Re Granada Apartments, 7 Cir., 104 F.2d 528, upheld the validity of the state court proceedings. There, as here, it was charged that the receiver's certificates were issued in fraud of creditors.

Item V. This item in the amount of $11,365.42, represents 4% of debtor's gross income charged for management. Of this amount $2,512.23 was received by the Central Republic Trust Company during its tenure as trustee, and approved by the state court. Of the amount charged by City National, the sum of $6,189.60 was also approved by the state court. The trust deed authorized the retention of reasonable management fees of the trustee and its agents. The state court found the amounts retained to be reasonable and approved the same by decree. The court trustee, in the instant matter, was allowed $7,500 as compensation for his services in operating the same property for a period of about six

months, which is about the same rate as that received by City National. It appears from the record that the charge was the usual and customary one under the circumstances. There is no basis for now charging this item to City National.

■ Item VI in the amount of $10,186.65 represents the total of a number of small items and here again no distinction is made between City National and former trustees, and the state court proceedings are treated as invalid. Of this item, $2,552.80 was paid by the City National to the state court master-in-chancery, and $2,000 to counsel for the Chicago Title and Trust Company as receiver for fees determined and ordered paid by an order of the state court of March 16, 1934. This latter item of $2,000 appears also to have been charged to City National in Item IV discussed heretofore. In 1935, an involuntary 77B petition was filed against the debtor by three creditors. Counsel for City National attacked the validity of that proceeding, and its contention was upheld by the Supreme Court. Tuttle v. Harris, 297 U.S. 225, 56 S.Ct. 416, 80 L.Ed. 654. Included in Item VI is the sum of $4,025.29 of which $3,500 was paid as attorney fees and the remainder as court costs incurred in that litigation which the court trustee here argues was without benefit to the estate. This, we need not determine—it is sufficient, so far as we are able to ascertain, that it was carried on in good faith and the charge therefore was reasonable. Also included in Item VI is the sum of $1,608.56 which appears to represent the same charge included in item III discussed heretofore. In other words, this amount is twice charged against City National.

■ Item VII. The sum of $250 represents commissions paid to Arlington Hotel because of business supplied to the valet shop in the basement of the debtor's property. It was customary for a hotel to receive a commission on business furnished an outside valet shop. It is argued by City National that it was of benefit to debtor's property to maintain a valet shop on the premises in order that its tenants might be accommodated; that it did not have sufficient business of its own to maintain such a shop and, therefore, as an inducement to Arlington, it paid the customary commission for the business furnished. We perceive neither fraud nor mismanagement in such an arrangement.

■ Item VIII. It seems that adjacent to Granada Apartments and about the same time, there were constructed two other apartment buildings, Lincoln Park Manor and Arlington Hotel. Granada provided the facilities for furnishing heat, hot water and refrigeration to the other buildings.

Prior to December, 1933, Granada received as compensation for such services $11,280 per annum. At that time a contract was entered into between the owners of the two properties by which Granada was to receive as compensation $7,200, or a reduction of $4,080 per annum. Central Republic Trust Company, as trustee, continued the same charge, as did City National after it took possession. The amount of this item, $19,170, represents the difference between what City National and its predecessor received, and what they would have received had there been no reduction in such charge. The Arlington was in process of reorganization, and it seems to be the position of the court trustee that because a committee representing the bondholders of Arlington was connected with City National in the same manner as the committee in the Granada matter, that there was some character of fiduciary relationship existing by which City National should have obtained the compensation originally established for this service. Though this situation may arouse some suspicion, we do not see how it can amount to fraud. Especially is this true in view of the rather conclusive testimony of at least two engineers that the compensation received from Arlington was fair and reasonable. In fact, it was shown that Arlington proposed to equip its own building with facilities to provide such service in the event that Granada should insist on a charge greater than what was made.

■ Item IX. Granada, at the time of its construction, provided on the ground floor, space for a solarium, writing room, ball room and offices for the use, not only of its own tenants, but for those of adjacent buildings in which the original owner of Granada was interested. This situation had existed since the construction of the building in 1924. It is the contention of the court trustee that City National should have converted this space so that it could have been used for commercial purposes and, that by its failure to do so, it is to be charged with mismanagement. The

amount of the item $10,968, is supposed to represent what the rental value of this space would have been had it been made fit for leasing purposes. A number of witnesses testified pro and con concerning the feasibility of making the necessary alterations and also the probability of a demand for such space if it had been available. We are convinced, from a study of the testimony, that the advisibility of making the changes required, was a matter of speculation. Even if City National had deemed it expedient to make the necessary alterations, there still was a question of its power to incur the rather large expense which would have been necessary. If it had done so and had not been able to find tenants for the space, we doubt not but that the court trustee would now be attempting to charge it with a reckless expenditure in this respect. We do not understand that a trustee is liable for errors of judgment, provided it acts in good faith. Its acts must be judged in the light of its foresight rather than its hindsight. Chicago Title & Trust Company v. Chief Wash Company, 368 Ill. 146, 159, 13 N.E.2d 153.

Item X. City National states there is no evidence in support of this charge of $5,000, and we are unable to find any. In the brief for City National, the court trustee is called upon to point out upon what the item is predicated, but no response is made. It was not mentioned in the counter-claim of the trustee.

Thus, we conclude there is no justification for charging City National with these various items, with the exception of what we have said with reference to Item III. In reaching this conclusion, we are not unmindful of the rule which requires us to accept findings of the trial court supported by substantial evidence. Here, however, they are predicated upon a theory of the existence of a conspiracy to which appellants were parties. We are satisfied no such conspiracy was proven. More than that, we are convinced that so far as this record discloses, the attorneys have received no more than reasonable compensation for services rendered in numerous matters of litigation had in the state courts. Also, we are not unmindful of the broad powers of a bankruptcy court in adjudicating the equitable rights of the parties involved. Numerous cases are called to our attention in support thereof,

including the recent case of Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. ——. We are not aware, however, that any court has gone so far as to hold that even a court of bankruptcy is vested with power to disturb the rights of parties long since determined by courts of competent jurisdiction merely upon a suspicion of fraud. So far as this record discloses, the decrees, orders and judgments of the state court were in proceedings where the court had jurisdiction of the subject matter and the parties and we do not think they can be swept aside upon any such pretext as is here advanced.

Having concluded that the counter-claim of the court trustee can not be sustained, and that the findings of the court in support thereof were erroneous, we are now confronted with the perplexing problem as to what disposition should be made of the claims of City National, the committee and the attorneys. It is argued by appellants that this court has the right and should determine the fees to be allowed to these various parties on the theory that the District Court made allowances wholly inadequate. Our attention is called to In re Dickinson Co., 7 Cir., 104 F.2d 771, wherein this court increased a fee allowed by the District Court. We doubt, however, if that case is authority for such action here for the reason that we are uncertain as to whether the action of the court below constituted a fixing or determination of the amounts to be allowed on the respective claims.

Finding 55 (footnote 1) discussed heretofore, definitely fixes in favor of the court trustee a liability on City National in the sum of $79,930.93, which, with interest, exceeds $100,000, although later in the findings as well as in the decree it was relieved of all liability except as an offset to what might be due it. In Finding 56, it is stated that City National was not a lawful trustee, but if entitled to anything, should not receive in excess of $500, and nothing for out-of-pocket expenses. It was found that if the committee were entitled to receive anything the maximum would not exceed $1,000 for their fees, $1,150 as a maximum allowance for depositary fees and a maximum of $2,285.21 for out-of-pocket expenses; that the attorneys for City National and the committee "if they were entitled to receive any compensation for services in this proceeding or for any

842

previous services about Granada matters, the maximum therefor would not exceed $4,500 in addition to cash payments made to them." Then it is stated: "Any award that should be made by reason of their services, could be credited only to account of City National."

In Finding 57, the court finds that all equities are with the court trustee and then continues: " * * * but the court believes that justice to all concerned will be rendered more speedily if the opposing claims and contentions are set off against each other and said named parties to this accounting (court trustee, City National, committee, and attorneys) are left as they are now, each to pay its own costs and charges, and no cash recovery to be allowed or made by these findings and decree." It is apparent that no definite determination was made as to the amounts which appellants were entitled to recover. It is true the maximum amounts mentioned by the court were about $9,000, but it is difficult to understand how the court arrived at the conclusion that this amount should or could constitute a set-off against more than $100,000, specifically found due and owing by City National.

The decree entered May 2, 1939, expressly disallows Claim No. 9 by City National against the debtor,[2] and also all claims for expenses and allowances by it, the committee and their attorneys. City National was discharged from making any further accounting and it was provided that all amounts due it from the debtor's estate be off-set against the counter-claim of the court trustee.

While we, perhaps, have the authority on review to increase, as well as decrease fees fixed by the court below, we do not think the situation here is such that we should determine the amounts in which the various claims shall be allowed. It seems appropriate, however, to give some general expression of opinion. We have examined the claims submitted by City National and the committee for what is designated as out-of-pocket expenses, and we see no reason why those claims should not be allowed in full. As to all other claims for compensation and fees, for services rendered in connection with the reorganization

proceeding, the amounts mentioned by the court are inadequate, and the court should determine and fix what is the reasonable and customary charge for services thus rendered.

■ At the commencement of the hearing, counsel for City National stated: " * * * we are willing that the Court here fix the reasonableness of the charge for services rendered by us in the state court proceedings on behalf of the Indenture Trustee, notwithstanding the existing limitations upon the Federal Court's right to review the allowance for such services made by the state court in the decree of sale."

In view of this concession, the court has the right to review the reasonableness of the allowances made in the state court upon which Claim No. 9 is predicated. In doing so, the state court proceeding should be considered as valid and untainted by fraud.

These appeals are reversed, with directions that the court proceed in accordance with the views expressed, costs to be taxed to the court trustee.

Appeal 7061 is by the court trustee and presents a situation, the reverse of that which we have considered in Appeals 6986 and 7060. Here, it is contended that the court in its findings, specifically held City National liable to the court trustee in the amount of about $80,000 and then, by its decree, refused to enter judgment against City National in conformity therewith. There would be merit to the position of the court trustee if such findings were supported by substantial evidence. We have determined to the contrary, however, and it necessarily follows that there is no merit in the position of the court trustee in the instant appeal. Therefore, that portion of the decree by which the court refused or failed to give judgment against the City National based upon the findings in question, is affirmed. Costs to be taxed to the court trustee.

■ Appeal 7186 is from an order of the District Court entered November 20, 1939, directing Granada Apartments Hotel Corporation, the new corporation created as a result of the reorganization proceeding, to pay the claim of the Indemnity In-

---

[2] This is the claim predicated upon the order of the Superior Court of Cook County, entered December 18, 1936, in the foreclosure proceedings discussed heretofore.

surance Company of North America in the sum of $4,000 and interest forthwith. This claim has been discussed in connection with Item IV in Appeals 6986 and 7060. It is predicated upon receiver's certificates issued by order of the Superior Court of Cook County and purchased by appellee. We are unable to perceive how there could be any doubt but that the court properly directed the payment of this claim in cash by the new corporation. The plan of reorganization approved by the court, provided: "5. Payment of the said Receiver's Certificate now outstanding issued in said foreclosure proceedings shall be assumed and paid in cash by the Reorganized Company." The assets of the old corporation were conveyed by the court trustee to the reorganized company upon an assumption by the latter of all claims and liabilities as provided in the plan of reorganization. It seems this alone would be sufficient to settle this controversy, but in addition, this claim was before this court In re Granada Apartments, Inc., 7 Cir., 104 F.2d 528, and a reading of that opinion discloses clearly that this claim was to be paid in cash by the reorganized corporation. The order of the District Court is therefore affirmed. Costs taxed to the court trustee.

Appeal 7086 is from an order of June 30, 1939, dismissing the petition of the court trustee wherein it was sought to recover against Arlington, Inc. (successor of Arlington Hotel). This claim, or the major portion of it, is predicated upon the same situation discussed under Item VIII in Appeals 6986 and 7060. In those appeals, it was sought to hold City National liable for the difference in the amount it received as compensation for heating and refrigeration facilities furnished by Granada to Arlington, and the amount which the court trustee contended should have been charged. The argument here on behalf of the court trustee is predicated upon the same findings of fact (so far as material) as those upon which it was sought to hold City National liable. We have concluded those findings were without substantial support and for that reason City National should not be required to account in the matter. We also conclude there is no liability on the part of Arlington, Inc. The decree of the District Court is affirmed. Costs to be taxes to the court trustee.