

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-23-2007

# USA v. Weekes

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2082

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Weekes" (2007). *2007 Decisions.* Paper 1075.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1075

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2082

———

UNITED STATES OF AMERICA

v.

PHINEHAS WEEKES,

*Appellant*

———

On Appeal from the District Court of the Virgin Islands,
Division of St. Croix
(D.C. Crim. No. 1999/0089-1)
District Judge: Hon. Anne E. Thompson

———

Argued May 7, 2007

Before: SLOVITER, STAPLETON, and VAN ANTWERPEN, *Circuit Judges*.

(Filed May 23, 2007)

Eric S. Chancellor (Argued)
2111 Company Street, Suite 7
Christiansted, St. Croix,  U.S.V.I. 00820

   *Counsel for Appellant*

Kim L. Chisholm (Argued)
Everard E. Potter
Office of the United States Attorney for the District of the Virgin Islands
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas, U.S.V.I. 00802

Alphonso G. Andrews, Jr.
Office of the United States Attorney for the District of the Virgin Islands
1108 King Street, Suite 201
Christiansted, St. Croix, U.S.V.I. 00820

*Counsel for the United States*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, *Circuit Judge*.

Appellant Phinehas Weekes was convicted by the District Court of discharging a firearm in a school zone, possessing a firearm during a crime of violence, and using a firearm during a crime of violence. On appeal, Weekes argues that the prosecution made a number of inappropriate comments during its closing argument and that these comments undermined the fairness of Weekes' trial.

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231 and 48 U.S.C. § 1612, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. *See United States v. Polanco*, 451 F.3d 308, 310 (3d Cir. 2006). For the reasons set forth below, we will affirm.

I.

According to his indictment, on August 30, 1999, Appellant Phinehas Weekes shot acquaintance Gary Mason three times after Mason, who was driving around in

1

search of crack cocaine, hit Weekes' car as it was parked in front of Weekes' house. Two weeks after the shooting, police questioned Mason while he was still in the hospital. During this questioning, Mason identified Weekes as the culprit and then picked Weekes' photo out of a six-person array.

On December 14, 1999, Weekes was indicted, and on January 8, 2004, he stood trial for the following: (1) discharging a firearm in a school zone, a violation of 18 U.S.C. § 922(q)(3)(A), (2) attempted first-degree murder, a violation of 14 V.I.C. §§ 922(a)(1) and 331, (3) possessing a firearm during a crime of violence, a violation of 14 V.I.C. § 2253(a), and (4) discharging a firearm during a violent crime, a violation of 18 U.S.C. § 924(c)(1)(A). The jury found Weekes not guilty of attempted first degree murder, but could not reach a verdict as to the other three counts. Accordingly, the District Court declared a mistrial as to these three counts and commenced a second trial on April 5, 2004.

At the second trial, Mason testified, as did an eyewitness who had been sitting in a parked car near the incident and who knew Weekes. Both identified Weekes as the shooter. In addition, Weekes' neighbor testified that she saw Weekes enter his home just after she heard gun shots, and a police officer testified that he saw Weekes walking toward the back of his house some time after another witness testified that she saw an unidentified man walking away from Weekes' house with a bag in his hand. Ultimately, a jury found Weekes guilty on all three counts. On March 16, 2006, the District Court

2

sentenced him to 122 months' imprisonment followed by three years of supervised release, a special assessment of $200, and a fine of $2000.

On March 17, 2006, Weekes filed this timely appeal.

II.

On appeal, Weekes argues that his second trial was unfair because of five remarks made by the prosecutor during his closing argument. He claims three of these comments constituted impermissible vouching and that the remaining two were improper for other reasons. We will review each of these comments below.

At the outset, we note that Weekes's attorney objected to four of the five comments and that the District Court sustained all of his objections. As to the instance of alleged vouching to which Weekes did not object, we review for plain error. *See United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003); *United States v. Walker*, 155 F.3d 180, 187-88 (3d Cir. 1998).

We consider all five comments in reviewing for abuse of discretion the District Court's decision not to grant Weekes' motion for a mistrial on the grounds that the prosecutor made improper remarks in his closing argument. *United States v. Dispoz-O-Plastics, Inc.*, 172 F.3d 275, 282 (3d Cir. 1999). If we find an error, we must apply harmless error analysis. *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir. 1996). The standard used in the harmless error analysis "depends on whether the

error was of constitutional proportions." *Id.* (citation omitted). If there is a constitutional error, this Court may affirm only if the error is "harmless beyond a reasonable doubt." *Id.* (citing *Chapman v. State of California*, 386 U.S. 18, 24 (1967)). If the error is non-constitutional, this Court "may affirm so long as there is a 'high probability' the error did not contribute to the conviction." *Id.* (citing *United States v. Jannotti*, 729 F.2d 213, 219-20 (3d Cir. 1984)). In judging whether improper remarks are harmful, we consider "their scope, their relation to the context of the trial, the ameliorative effect of any curative instructions and the strength of the evidence supporting the conviction." *United States v. Rivas*, 479 F.3d 259, 267 (3d Cir. 2007) (citation omitted).

### A. The District Court Did Not Commit Plain Error

At Weekes' trial, the prosecution called a witness who had been walking in the back of Weekes' residence shortly after the shooting. This witness testified that she saw a person with a small bag come from the rear of Weekes' residence and walk down a hill toward the beach. The witness did not see this person's face or know what was in the bag. During his closing argument, the prosecutor asserted the following with respect to the identity of the person and the contents of the bag: "I guarantee you, that was the murder weapon that this Defendant was on his way to dispose of." App. at 214. On appeal, Weekes argues this comment constituted impermissible vouching.

As the Supreme Court explained in *United States v. Young*, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone,

4

for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." 470 U.S. 1, 11 (1985). With respect to improper vouching, two criteria must be met: "(1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance [must be] based on either the prosecutor's personal knowledge, or other information not contained in the record." *Walker*, 155 F.3d at 187.

After reviewing the context of the prosecutor's inartful comment, we find that it invited the jury to draw an inference from the witness' testimony and did not constitute impermissible vouching. First, the prosecutor never made a claim about the witness' credibility or misled the jury about her statements. In fact, the prosecutor made clear that the witness "could not say who [the person walking toward the beach] was." App. at 213. Second, just before making the "I guarantee you . . ." comment, the prosecutor explicitly asked the jurors to draw an inference about the identity of the unidentified person from the timing of his appearance relative to the shooting, the person's proximity to Weekes' residence, and the person's apparent destination. *See id*. (" Now, she couldn't say who it was, but you could use you inferences."). The "I guarantee you . . ." comment was an extension of this discussion. Third, the prosecutor's comment in this case could not be viewed as being based upon special knowledge unique to the prosecutor. This distinguishes the comment from a similar one made by a prosecutor in *Dispoz-O-Plastics, Inc.*, a case on which Weekes heavily relies. *See Dispoz-O-Plastics,*

*Inc.*, 172 F.3d at 280 ("*I can guarantee you* the Justice Department doesn't give two for one [plea bargain] deals . . . .") (emphasis added). In *Dispoz-O-Plastics, Inc.*, we were concerned that the jury, after hearing the comment, would believe that the prosecutor, an employee of the Justice Department, had special knowledge of the Justice Department's plea bargain policies. *See id*. at 284 (explaining "[h]is remark about the purported policy of the Department of Justice . . . was meant to convince the jury that . . . the department would not give a deal in return for two guilty pleas . . ."). In this case, nothing about the prosecutor's office or his involvement in the case would have led a jury to believe that he had special knowledge of the identity of the witness or the contents of the bag. Finally, after reviewing the context of the statement, it is clear that the jury would not have taken the prosecutor's comment as an actual guarantee based on information outside the record. Before discussing the testimony of individual witnesses, the prosecutor explained as follows: "I want you to remember that, as the Court told you, in addition to the evidence that you hear from witnesses . . . you are allowed to make reasonable inferences. That's just another way of saying you can use your common sense to figure out what happened[ f]rom the evidence you have." App. at 212. He then indicated that he was going to discuss the testimony of each witness and draw "the reasonable inference[s] that you[, the jury,] could make." *Id*. Given the prosecutor's explanation, and his many subsequent references to drawing reasonable inferences, the jury would not have believed that the prosecutor was supplying it with information outside of the record when he made the "I

6

guarantee you . . ." statement.

Accordingly, although we believe the prosecutor's use of the "guarantee" language was inappropriate, we find no plain error in the District Court's failure to strike it *sua sponte* under the circumstances of this case.

*B. The District Court Did Not Abuse Its Discretion in Denying Weekes' Mistrial Motion*

Weekes also appeals the District Court's failure to grant his motion for a mistrial given the prosecutor's five comments. He claims that these comments, standing alone and taken together, prejudiced his trial. We analyze each of the four remaining comments below and then consider all five comments collectively.

*1. Reference to witnesses who did not testify at trial*

At Weekes' trial, a detective testified that he confronted Weekes on September 1, *prior to* learning his identity from the victim, and accused Weekes of the shooting. The detective also testified that he knew the identities of those who had testified in front of the grand jury on September 7 in this matter, that some of those who testified were associates of Weekes, and that Weekes left the island shortly after they had testified. *See* App. at 55-58. Weekes did not object to any of this testimony. In his summation, the prosecutor made the following remarks:

> PROSECUTOR: Again, you have to use your logical inferences. Why is [the detective] telling [Weekes], "I know you did it?" Why is he telling him, as opposed to anybody else in the community? Unless [the detective] got information from someplace else.

7

DEFENSE COUNSEL: Objection. Arguing facts not in evidence, Your Honor.

COURT: Sustained.

PROSECUTOR: Logical inferences. You need to ask yourself, why is he out there asking or accusing him of committing the crime? How would he know if he wasn't there?

\*\*\*

We know that [the detective] couldn't have gotten any information from the victim . . . because the victim was still unconscious.

\*\*\*

You got more.

Why wasn't the defendant in this apartment where he lives on December 15th when [the detective] went to look for him?

He told you he had gone. And we knew he left. The evidence is he left the island September 10th.[1] But the evidence, also, is that December 7th, witnesses went to the Grand Jury on this case. The evidence also is that some of those witnesses were associates of the Defendant.

DEFENSE COUNSEL: Again, Your Honor, arguing facts not in evidence.

COURT: Sustained.

App. at 217-18.

We analyze these and the remaining comments in two steps: "[W]e must first be

---

[1]In referring to the date of the defendant's flight, the prosecutor misspoke. Later in his closing argument, he clarified that Weekes fled the island on December 10, 1999, not September 10, 1999. *See* App. at 219 (explaining that "[h]e was running from December 10th until 2002").

convinced that the prosecution did in fact misconduct itself." *Rivas*, 479 F.3d at 266. If we find misconduct, we then apply harmless error analysis. *See Molina-Guevara*, 96 F.3d at 703.

Weekes argues that the prosecutor's comments invited the jury to infer "that there were other witnesses who gave [the detective] information," and that these other witnesses were not available for cross-examination. Weekes' Br. at 15. We find the prosecutor's remark that the detective "got information from someplace else" somewhat unclear. App. at 217. If the term "someplace else" referred to a person or persons who testified at trial, such as the eyewitness or Weekes' neighbor, the remark would appear to be proper. However, if the term "someplace else" referred to a person or persons who did not testify at trial, the prosecutor's argument would be improper. Calling for such an inference would implicate Weekes' right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Accordingly, we may affirm the District Court's decision to deny Weekes' motion for a mistrial only if the comments were "harmless beyond a reasonable doubt." *Molina-Guevara*, 96 F.3d at 703.

Even if we assume the term "someplace" referred to a person or persons who did not testify at trial, we nevertheless conclude that the prosecutor's comments were harmless for the following reasons. First, Weekes immediately lodged objections to these comments and the District Court promptly sustained these objections. This contrasts with the District Court's decision to overrule defense counsel's objections to inappropriate

comments in *Molina-Guevara*, a case Weekes argues is analogous to his. Second, on more than one occasion, the District Court instructed the jury that "arguments of the lawyers are not evidence." Apr. 6, 2004, Jury Charge Tr. at 6, 39. As we have explained, "[w]e must assume that juries for the most part understand and faithfully follow instructions." *Gov't of V.I. v. Rosa*, 399 F.3d 283, 297 (3d Cir. 2005) (quoting *Connecticut v. Johnson*, 460 U.S. 73, 85 n. 14 (1983)). We see nothing in the record that would lead us to believe that this assumption is unwarranted in this case. Finally, the evidence presented against Weekes at trial was sufficiently strong to support his conviction. The victim and the eyewitness who identified Weekes as the shooter knew him personally. These witnesses testified consistently at trial. In addition, other witnesses testified that Weekes entered his home immediately after the shooting and that he was walking back to his house just minutes after a witness saw an unidentified person walk from the back of Weekes' home toward the beach. Even Weekes' own witness, Bertram Joseph, who lived with Weekes and was in his bedroom at the time of the shooting, testified that he heard the front door close just after the shooting.

In sum, given that the District Court sustained Weekes' objections to the comments, the ameliorative effect of the District Court's jury instruction, and the strength of the evidence supporting Weekes' conviction, we find the prosecutor's error harmless beyond a reasonable doubt.

*2. Reference to witnesses too afraid to come forward*

At Weekes' trial, the detective who confronted Weekes after the shooting said that Weekes made the following comment in response to the detective's accusation that Weekes was the shooter: "[You] will have to prove that, because nobody [is] going to talk about that in [my neighborhood]." App. at 52. Weekes did not object to this testimony. During his summation, the prosecutor implicitly referenced this comment as follows: "Think about what's happening here, ladies and gentlemen. There is obviously a code. There is a street code that says you don't talk. You don't become an eyewitness." App. at 240. Weekes lodged an objection to this comment that the Court sustained.

We do not find that the prosecutor erred in making this statement. As we have explained, "the prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Green*, 25 F.3d 206, 210 (3d Cir. 1994) (quoting *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991)). We find it was reasonable for the prosecutor to infer that there was a "street code" based on Weekes' comment that no one in his neighborhood would talk to police about the shooting.

*3. Reference to Weekes' motive*

At Weekes' trial, the victim testified that he knew Weekes through Weekes' stepfather and that he had testified on behalf of Weekes' stepfather and against Weekes' mother in a child-custody dispute that Weekes' mother ultimately lost. Weekes objected to this line of questioning, but the Court permitted it because it went to motive. In his

11

closing, the prosecutor explicitly stated that this dispute gave Weekes a motive: "I would say [Weekes] had some motive beyond the hitting of his vehicle . . . Remember [the victim] testified that two weeks before this incident happened, . . . [h]e was testifying, in essence, against this Defendant's mother . . . . And as a result of that, [Weekes' stepfather] got custody [of Weekes' little sister.]" App. at 219. Weekes lodged an objection to this comment that the Court sustained.

We do not find that the prosecutor erred in making this statement, as it was reasonable to infer that Weekes may have held a grudge against the victim based on the victim's then-recent testimony against Weekes' mother.

*4. Reference to lack of a weapon*

Finally, the prosecutor made the following comments about the government's failure to produce the gun used to shoot Mason: "You have to prove that the defendant had a gun but there is no element that says produce the gun. That's a red herring. You realize how easy it would be to just continue shoot (sic) up people, committing crimes, while, if the Government had to produce a gun? If you think that we have problems now with people being shot and shots being discharged, it will be worse – " App. at 239. Weekes lodged an objection to this comment that the Court sustained.

Weekes argues that this comment by the prosecution constituted error and that it was made to inflame the passions of the jury. We agree. However, we find that there is a high probability that this non-constitutional error did not contribute to Weekes'

12

conviction. We base our finding on the District Court's providing the jury with the following curative instruction intended to specifically address this improper remark:

> This defendant is not on trial for any general charge concerning weapons. He is not on trial for anything not in the indictment. He cannot be held accountable for crimes of violence that [are] not charged in the indictment. He cannot be held accountable for use of weapons on the streets of St. Croix or the Virgin Islands in particular.

Apr. 7, 2004, Jury Charge Tr. at 1. This instruction, when considered along with the fact that the District Court sustained Weekes' objection to the comment and that the evidence against Weekes was strong, permits us to conclude to a high probability that the comment did not negatively affect Weekes' trial.

*5. Cumulative Effect of All Five Comments*

Weekes also argues that all five comments, when considered together, undermined the fairness of his trial. We disagree. As we have discussed, we find no impropriety with respect to two of the five. Given the limited scope of the remaining comments, the District Court's sustaining of the two objections that were made, the District Court's general and specific curative instructions, and the strength of the evidence against Weekes, we find these comments harmless beyond a reasonable doubt.

Accordingly, we find the District Court did not abuse its discretion in denying Weekes' motion for a mistrial.[2]

---

[2]Although we do not find the prosecutor's inappropriate comments to be sufficiently prejudicial to rise to the level of reversible error, our disposition of this case should not be

III.

We have considered all other arguments made by the parties on appeal, and conclude that no further discussion is necessary.  For the foregoing reasons, we will affirm the District Court's decision in all respects.

understood to condone the improper remarks made here. Even where prosecutorial indiscretion in closing arguments does not constitute reversible error, such misconduct "results in an unnecessary waste of judicial resources, both at the trial and appellate level, by diversion and attention to review of what by now should be understood to be totally unacceptable conduct . . . ." *United States v. Maccini*, 721 F.2d 840, 846 (1st Cir. 1983); *see United States v. Somers*, 496 F.2d 723, 742 (3d Cir. 1974) ("[O]ur Court has too frequently been required to review the issue of prosecutorial misconduct.  We feel quite strongly that we should not have to deal so constantly with such a recurring issue when it can so readily be avoided."); *United States v. Bethancourt*, 65 F.3d 1074, 1084 (3d Cir. 1995) (McKee, J., concurring in part and dissenting in part) (noting regularity with which we have addressed instances of improper closing argument, notwithstanding our "oft repeated refrain as to the impropriety and danger of such argument").